The Chief Justice

delivered the Opinion of the Court in this case, at the last Fall Term; but the decision was afterwards suspended, for further consideration, and was not made final till this day.
James Quertermus, senior, being the owner of several slaves, devised them to his surviving wife, with express authority to dispose of them as she should choose at her death. Afterwards, she died, and, by her last will, regularly executed and established, she emancipated one of those slaves named Caleb. Some time after the death of the testatrix, Caleb was sold under an execution issued on a judgment which had been obtained by one John Murphy, against the executor of the testator, the administrator with the will annexed, of the testatrix, as one of his devisees, and against several other persons, as his other devisees.
The purchaser having sold Caleb to one Abraham Field, who treated him as a slave — he filed a bill in chancery against Field, and the personal representative of the testatrix, asserting that he was a free man, and praying for a decree accordingly. The Circuit Judge having dismissed the bill absolutely, on the final hearing, the case Is now to be revised.
There may be plausible ground for doubting whether, upon a new of entire will of James Quertermus, senior, the testator intended to limit his wife’s interest in the slaves to her life, with an unqualified power of dispo *347 sition at her death; or whether he intended to devise to her a power of disposition without any limitation. If the will should be interpreted as importing that she should have only a life estate in the slaves, as well as in other property devised to her expressly during her life, then, according to many adjudged cases, the unlimited power of disposition which the will expressly authorized her to make of them at her death, was not entitled to the effect which should have been given to it had there been no such express limitation, that is — of giving to her the entire estate absolutely and forever. In those cases, a radical distinction has been made between a simple devise of an unrestricted power of disposition by the devisee, at or before his or her death, and a devise expressly for life, with the like authority. In, the first class of cases, the Jus disponendi, at the will or for the benefit of the devisee, is construed as implying an absolute gift in fee. But in the last class, it has been considered as not extending an express life estate, but only as giving a discretionary power, without the execution of which, the devised estate will revert at the devisee’s death. Robinson vs Dusgate, 2 Vern. 181; Maskelyne vs Maskelyne, Ambl. 751; Hixon vs Oliver, 13 Ves. 108; 3 Leonard, Anon.; Tomlinson vs Dighton, 1 Pr. Wms. 149; and 7 Ves. 392, 4, 8.
Where a man devises a slave to his wife for life, with the power of disposing of him at her death, and she emancipates him by her last will, the emancipation is as valid and effectual as tho’ it had been by the first will.
A slave manumitted by a devisee to whom he was devised for life, with power to dispose of him at her death, is subject to the lien of the creditors of the first testator.
But even if the devise of the slaves to the widow should be considered as giving her only an estate for life, still, as her husband gave her an unlimited power to dispose of them at her death, and she executed that power by her own last will, the emancipation, thus authorized by the grantor, and effected by the donee of the power, must be deemed, in all respects, as valid and effectual as it would have been had the first will emancipated the slaves, instead of giving the widow the'power to liberate them.
We are inclined to the opinion, however, that the widow had only a life estate in Caleb, with authority to manumit him if she thought fit to do so; and that, therefore, the emancipation, as if by the testator himself, was subject to the lien given by statute to his creditors, if he owed debts which could not otherwise be made.
As slaves pass, under the statute of this state, by last will, as land, a slave devised does not go to the ex’or as assets; but passes, at once, and without his assent, to the devisee. Nor are slaves emancipated by last will, assets in the hands of the ex’or: the emancipation takes effect immediately and without his assent. Consequently, a manumitted slave cannot be sold under an ex’on against the estate in the hands of the ex'or. The lien reserved by law to the testator’s creditors, can only be secured by a proceeding in which the manumitted person can defend his rights; and he will not be subjected without necessity, or to a greater extent than is absolutely necessary. In other states where slaves are altogether personal property, a different rule prevails.
The record of a judgt. which does not show that any of the defts. appeared, or were cited, does not show that the Court had jurisdiction, & consequently, does not show any authority for a sale under an execution on the judgment.
*348 Caleb was then undoubtedly a free man, with the coritingent liability to be subjected to the satisfaction of any bona fide debt due by his deceased master. And we are clearly of the opinion that the sale of him, under Murphy’s execution, was unauthorized and void.
As, by the law of this State, slaves pass by last will, as land, it has been decided by this Court — first, that a devised slave does not go to the executor as assets, but passes immediately to the devisee without the executor’s assent; and, secondly, that, in like manner, a slave emancipated by will, is not assets in the hands of the executor, but that the title to freedom passes to the beneficiary immediately, and the assent of the executor is, consequently, in no degree necessary for the perfect consummation and instantaneous enjoyment of it. Consequently, the lien reserved by statute in favor of tfie creditors of the emancipator, cannot be enforced, by an execution against the assets which came, or could ever come, to the hands of the executor; but can be secured only by a proceeding in which the person manumitted would be entitled to defend his rights, and should never be disfranchised for an instant, unless the debt of the pursuing creditor cannot be otherwise made, nor to a greater extent than the payment of it should render necessary. This seems to be the reasonable, if not necessary, effect of the laws, of this State — though a different doctrine and practice prevails, of course, in some other states, where slaves being personal property, pass by will, as chattels, and, therefore, go to the executors in the first instance, as assets even though declared by will to be free. If then, it were conceded that Murphy’s judgment was valid, and obtained for a subsisting and just debt, still the sale of Caleb under an execution on that judgment, was illegal and void; because, if he were liable to be sold as a slave, he was not assels in the hands, of the personal representative of either the testator or testatrix, against the assets in the hands of whom the judgment had been rendered, and the execution thereon was issued,
Moreover, the judgment, as exhibited in the record now before us, even if it be not fraudulent, does not appear to have been valid; for the record of it does not *349 show that any of those against whom it was rendered, were ever made defendants by citation or appearance. And if, as may therefore be presumed, the Court had no jurisdiction to render the judgment, the execution and sale were unauthorized by law, and consequently void.
Where one held in slavery files a bill claiming freedom, under a will which is resisted on the ground, that he was liable, and sold, for a debt of the testator-as he must do equity when he asks equity, & the decree sho’d determine the whole matter—the Court should ascertain whether the debt is bona fide, and whether it can be satisfied in any other way; if not, he may be made liable for it, as far as maybe necessary.
A bona fide purchaser of a manumitted slave, fraudulently sold is not liable for his past services. His remedy is against the party, by whom he was sold, and at law.
The result of the view we have thus taken of this case, is, that the Circuit Court erred in dismissing the bill; and the decree must, therefore, be reversed.
If Murphy’s claim be just and valid, it would be proper to require Caleb to do what is equitable, whilst he is seeking relief in a court of equity; and it would be also right to make, in this suit, a final close of all controversy between the present parties, concerning his claim to immediate liberation. And therefore, upon the hypothesis just suggested, we should, in remanding the case, instruct the Circuit Court to give time for ascertaining whether the debt can be satisfied by any other means than by operating on his personal liberty; and, if the result should be, that all other means are insufficient, then to cause the deficit to be made out of him; but, if otherwise, then, and not before, to decree the liberation sought by his present bill.
But, in addition to the objection to the judgment which has been already noticed — there is another, apparently much more fatal to the foundation of Murphy’s claim; and that is, that the facts in the record conduce strongly to the conclusion that the claim is fictitious, and was fraudulently contrived for the mere purpose of depriving Caleb of his freedom. And, as the case now appears, there is not, in our opinion, any sufficient ground of equity, for resisting or postponing an immediate decree in Caleb’s favor.
According to the principles heretofore settled in the case of Aleck vs Tevis, Field, appearing, as he does, to have acted ip good faith, should not be required to remunerate Caleb for his services; his remedy is against Murphy, if the latter, by fabricating a false demand or otherwise, fraudulently attempted to deprive him of his liberty; and not only is the case not prepared with a view to any such relief, but, according to the facts exhibited, an action at law would be the more suitable remedy *350 against Murphy, if Caleb be entitled to any damages against him.
Wherefore, the decree of the Circuit Court is reversed, and the cause remanded, with instructions to render a decree liberating Caleb from servitude to Field.