Ball, &c., v. Hancock's Adm'r, &c.

82  107
90  136

82  107'
e112 880

Case 16—CONSTRUCTION OF DEED—May 15, 1884

# Ball, &c., v. Hancock's Adm'r, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The consideration stated in the deed is a promise to convey the property in contest to Mrs. H., to settle controversies between her and her hus-- band, and this recital being equivalent to an agreement to convey to- her, the deed will be construed in view of that object, so as to carry out the contract of the parties.
2. The word '' and ' to both the profits thereof to the use of the said Marion Sophia and her heirs," construed to pass the fee-simple to- Mrs. H.

YOUNG & TRABUE and W. P. D. BUSH for appellants.

1. The deed did not create a life estate in Mrs. H. On the contrary, it. created and vested an. estate in fee-simple for her to all the lots therein mentioned.
2. If said deed were construed to have created a life estate, it would then have to be construed as having vested such life estate in Mrs. H. with remainder; first, '' to her heirs;'' second, to the heirs of her husband in case she should survive him, and third, to the children of said W. Hancock, their heirs and assigns, in case she should die during the life-time of her husband, and should, up to her death, have failed to sell and convey or dispose of them by will. Churchill v. Reamer, 8 Bush, 256; Spurrier v. Parker, 16 B. Mon , 270; 2 Black Comm., 381; Smith's Real and Personal Property, 723–729; Washburn Real Prop., 628; Perry on Trusts, sec. 357; 4 Litt., 169; 1 Mar., 475; 3 Mar , 187; Herman on Estoppel, sec. 237; Biglow's It. , 295; Smith's. Real and Personal Prop., 483; 3 Wash. Real Prop., 4 ed., side-page 621; Ib., 622, 695; Bowles v. Winchester, 13 Bush, 1; 18 B. Mon., 329; Wash. Real Prop , 110; Johnson v. Johnson, 3 Met., 333; 2. Duvall, 547; 16 Johnson's Rep., 537; 13 Vesey, Jr., 445; 1 Sugden Powers, 124; Caleb v. Rield, 9 Dana., 547; Jarman Wills, 792; 21 Me., 288; 5 Mass., 500; 1 Mirrivals, 314; 10 Johnson, 520; Ib., 72; Leigh 408; 4 Kent's Comm., 199.

Ball, &c., v. Hancock's Adm'r, &c.

O. A. WEHLE, F. HOGAN, KINNEY & KINNEY & O'NEAL, O. J. C. BREWSTER, AND B. F. BUCKNER FOR APPELLEES.

1. The words '' to permit the said Hancock and the said ''Marion Sophia to    .    .    .    take the profits thereof to the use of ''said Marion Sophia and her heirs '' can not be construed to give Marion Sophia a fee-simple in the property itself, because such construction would reject all the following limitations contained in the deed as repugnant.

2. The words ''rents and profits'' do not, *ex vi termini*, mean the land itself. Hodson v. Ball, 14 Sim , 572; Magruder v. Peter, 4 Gill & J., 323; Boultcy v. Kauffman, 86 Penn. St., 99; they are only construed so when there is nothing repugnant to such construction in the papers

3. The technical construction of ''profits,'' as meaning the land itself, has its origin in the feudal law. Jarman on Wills; (Ed. Randolph & T. 2, 403); Boultey v. Kauffman, *supra*.

4. Even such technical words as ''*and their heirs forever*,'' must yield to the manifest intention expressed in the document. Adie v. Cornwall, 3 Mon., 276.

5. The first rule of construction is to reconcile all parts of the document. Spurrier v. Parker, 16 B. M., 200. A construction which creates a repugnancy must be rejected. Adie v. Cornwall, *supra*; Barclay v. Dupuy, 6 B. M., 98.

6. The old rule, that in a deed the first clause, in a will the last clause, must prevail, is not favored by modern jurisprudence. Adie v. Cornwall, *supra*; Greenleaf's Cruise's Digest, Deed XII, ? 26; 23 American Jurist, 277; Pike v. Monroe, 36 Me., 309; and great efforts are made by courts to avoid it by avoiding repugnancies.

7. A remainder to be in default of an appointment by the life-tenant A, gives B a vested remainder. Kent, IV, side-page 205; Cunningham v. Moody, 8 Ves., 174; Doe v. Martin, 4 T. R., 39; Sugden on Powers, 151 (5th Lond. Ed.); Clancy on Powers, II , 2738 to 2753; Williams v. Holmes, 4 Rich. (S. C.) Eq., 475

8. The phrases ''*to the heirs of said Washington Hancock*'' and the words ''*to said Hancock's children*'' both mean the son John then living, and any other issue of Washington Hancock. Thomas v. White, 3 Litt., 181; Williamson v. Williamson, 18 B. M., 329; Truman v. White, 14 B. M., 560; Feltman v. Butts, 8 Bush, 115; Tucker v. Tucker, 78 Ky., 503.

9. Constructions are favored which make a remainder a vested one. Williamson v. Williamson, *supra*; Kent's Com IV, side-page 203. The deed, therefore, gave to John Hancock a vested remainder.

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

This was an action by the administrator of Washington B. Hancock, deceased, to ascertain his interest in

lots number 18, 19, 20, and 21, lying on Jefferson and Fourteenth streets, in Cosby's Enlargement of the city of Louisville, and to subject it to payment of his debts, there being, as alleged, an insufficiency of personal estate for that purpose. The heirs of Marion Sophia, deceased wife of Washington B. Hancock, were made parties, and claimed, by appropriate pleadings, two-thirds interest in the lots which the administrator was. seeking to sell. Their claim was based upon a deed of trust executed by her brother, Henry S. Ball, on the 10th April, 1845, to Fortunatus Cosby. The material parts of the deed which bear upon this controversy, are as follows:

"That the party of the first part, the said Ball, in consideration of a promise heretofore made to the said Marion Sophia *to convey* the property hereinafter mentioned, *to her*, and for the further consideration of a. full, complete, and final settlement of all law suits, disputes, and demands of what character they may be, between the said Hancock and wife, a full relinquishment of which between the parties is hereby agreed upon, and is witnessed by this indenture, and for the further consideration of one dollar."

Then follows the grant and sale to Cosby of said lots, with a general description thereof, the deed concluding in these words:

"Upon trust, nevertheless, that the said Cosby, his heirs, and assigns shall permit the said Hancock and the said Marion Sophia to remain in quiet and peaceable possession of said parcel of ground and the improvements thereon, *and to take the profits thereof to the use of the said Marion Sophia and her heirs*, and upon

this further trust that the said Cosby will, upon *the written request of the said Marion Sophia, join her in any conveyance to any person for any purpose of the whole, or any part of the described premises; the funds or proceeds arising from such sale or disposition to be used, invested, and disposed of as the said Marion may direct,* the said Cosby exercising *no control* over the said premises and liable for no neglect. And also upon the further trust that the said Cosby, his heirs, and assigns will hold the said premises to the use—the said Marion Sophia solely and separately during the joint lives of the said Marion Sophia and the said Hancock, *subject to the direction of the said Marion Sophia as above directed;* and from and immediately after the death of said Washington Hancock, her husband as aforesaid, in case the said Marion Sophia should survive him, then to the said Marion Sophia during her natural life, and after her death to the heirs of the said Washington Hancock; *but in case the said Marion Sophia should die during the life-time of the said Hancock, then to the use of such persons for such estates and changes as the said Marion Sophia by her last will* and testament, in writing, or by any instrument of writing in the nature of or purporting to be the last will and testament, executed in the presence of two witnesses, *should direct, limit, or appoint,* and in default thereof, then to the use of the *children* of the said Hancock, *their* heirs, and assigns."

They had only one son, John, by name, who died in 1870, after he became of age, and before either of them died, she made a will during the life-time of their son, and devised two-thirds of the lots to him for and during

his natural.life, and the other third to her nephew, John B. Swan, in fee simple. She died in the life-time of her husband.

It is contended that the son, John Hancock, took a ·vested remainder in the whole of the lots, subject to be ·defeated by any disposition which his mother might make by last will, or by an instrument in the nature of last will, and that his father being his only heir was entitled to two-thirds of the lots by descent.

The statement of the consideration which is composed of a promise to *convey the property to her* to ·settle controversies between her and her husband, and of one dollar, recites an agreement that must have been made before the execution of the deed. The recital being equivalent to an agreement to convey to her, we must construe the remainder of the instrument in view ·of that object, and so as to carry out the contract of the parties, unless a clear and manifest purpose not to ·do so is exhibited by the language of the instrument itself. In Bank of Kentucky v. Vance, 4 Littell, 172, the court said : "The recital of an agreement in a deed, is, in law, equivalent to an agreement made by the ·deed ; and hence it is held, that upon such recited agreement, an action of covenant will lie." To the ·same effect is the case of Bealle's adm'r. v. Schoal's ex., 1 Mass., 354. It is clear, therefore, that the agreed purpose of the deed was to invest Mrs. Hancock with ·title to the property conveyed by it. In pursuance of that agreement she was invested with the right "to take the profits thereof to the use of" herself "and her heirs." This unlimited right to the profits conferred upon her heirs as well as herself, if nothing else

appeared in the deed restricting it, would amount to a grant of the land itself, for as said by Washburn, 3 vol. sec. 23, p. 622.   A grant of rents, issues, and profits of a tract of land is a grant of the land itself, and on p. 695, that "a devise of the rents and profits is equivalent to a devise of the land itself;" and by Smith on Real and Personal Property, page 491. "A grant of the *profits* of land carries the land itself."

In the case of Bowles v. Winchester, 13 Bush, p. 13, it is laid down that "the devise to the wife of the rents and profits for life and then to her issue, was in substance a devise of the property itself." "There is no foundation for the distinction (18 B. M., 329) attempted to be drawn between the land itself and its issues and profits."   See 4 Kent's Com., p. 6.

The terms "her heirs," indicate an intention to create a fee, and are words of limitation which mark out the extent of the estate conveyed.

But the use of the word "profits," and the inheritable term "heirs," are not the only provisions of the deed which evidence the purpose of conveying to her an absolute fee simple title.

She was also invested with the unrestricted power of alienation; the only condition to that power, if it be one, being that she should make a written request of the trustee to join her in the conveyance, and was given the right to the funds or proceeds arising from any sale she should make, "to be used, invested, or disposed of" as she "may direct."

The trustee was excluded from control over the premises and exempted from any neglect.   Thus she and her heirs were granted the profits; she was invested with

absolute power of alienation and entitled to the proceeds to do with as she pleased, and in the event of her death during the life-time of her husband, she was expressly authorized to dispose of the whole estate in fee simple by testamentary devise. This double express power of alienation by deed and disposition by will, is supplemented by the power cast upon her by operation of law to will the estate, because of the separate quality impressed upon it by the deed.

The deed is so strictly guarded in its terms that her husband had no power of control to any extent even over the rents and profits, and in every feature of it is to be seen the purpose of granting to her a fee simple estate, although these terms are not directly used. It has been often held that a devise, gift, or grant, generally or indefinitely, with power of disposition or absolute alienation, carries a fee, unless the first taker is vested with a life estate only, and the power of disposition is annexed to the remainder. 4 Kent, p. 319. In Jackson v. Robins, 16 Johnson, p. 588, the case was this: Lord Sterling, by his will, devised "all his real and personal estate whatsoever unto his wife *Sarah*, to hold the same to her, her executors, administrators, and assigns; but in case of her death without giving, devising, and bequeathing by will, or otherwise selling or assigning the said estate, or any part thereof, then he devised all such estate or all such parts thereof, as should so remain unsold, undevised or unbequeathed, unto his daughter, Catherine Duer."

This limitation over was declared void, Chancellor Kent saying the power conferred upon the wife "is an attribute of ownership, and carries with it a fee."

That "the limitation over must be either as a remain-
der or as an executory devise, and it is impossible that
it should be either. * * No remainder can be limited
after an estate in fee." This deed does not confer a
valid executory devise, because the absolute power of
alienation in Mrs. Hancock is inconsistent with it she
having the power not only to use for life, but to defeat
by alienation the subsequent estate that she was author-
ized to create by will. This court in Caleb v. Field and
others, 9 Dana, 347, held that a simple devise of an
unrestricted power of disposition implied an absolute
gift in fee. In Jarman on Wills, note 1, p. 669, it is
said: "A right in the first devisee to dispose of the
estate devised at his pleasure, and not a mere power of
specifying who may take amounts to an unqualified
gift." See Smith v. Starr, 3 Whart., 62.

We might add authority after authority to this point
but it is unnecessary, for the doctrine is, in the very
nature of things, based upon the inconsistency and
impossibility of creating antagonistic estates in the
same property, in one person, by the same deed.

If an absolute estate be granted by deed, or the
power to use, control, and dispose of the estate be
unlimited, which is equivalent to a positive grant of
the estate itself, there can neither be an executory
power, remainder over, or other inconsistent estate
superadded. In Ramsdell v. Ramsdell, 21 Maine, 288,
the court say: "It has become the settled rule of law
that if the devisee or legatee have the right to dispose
of the property at pleasure, the devise over is inopera-
tive." So it was held in Ide v. Ide, 5 Mass., 500; Hall
v. Robinson, 3 James Eq., 348; Bull v. Kingston, 1
Merrivals, 314.

The limitation over was held void in much such a case as this, in Jackson v. Bull, 10 Johnson's Reports, 20, where the testator gave the estate to his son Moses, his heirs, and assigns, and "in case my said son should die without lawful issue," the property was limited to others named. The decision was based upon the ground that the limitation or remainder was repugnant to an absolute control over the estate which the testator had given his son. In Melson v. Cooper, 4 Leigh (Va.), p. 488, the testator devised land to his son William and his heirs, and if he should die without a son and not sell the land, it was to go to the testator's son, George.

The court held the devise gave William absolute power of sale, and whether he sold or not he took a fee simple, and the devise over to George was void.

In the recent case of Howard v. Carrin, the Supreme Court U. S. (January 7, 1884), held where C was given an estate with power of disposition, that a provision that so much of the estate as C should not dispose of should, at his death, go to the testator's nieces was void, notwithstanding C was requested not to diminish the estate further than might be necessary to his comfortable support.

In that case the authorities we have cited with others are referred to and followed. The main question, therefore, is based upon the power of alienation conferred upon Mrs. Hancock.

The attempt to limit the estate to her natural life was confined to the case of her survival of her husband, but in that event she still had the unrestricted power of alienation by any conveyance to any person she might choose to bargain with. So that her powers of control,

sale, use of the proceeds, and of disposition by will renders it certain beyond reasonable doubt that she was not vested with a life estate only, if she died, as she did, during the life-time of her husband, and it is somewhat significant that in that event the limitation over is to the use of the *children*, instead of heirs of her husband. This must have resulted from an intention to keep the property in the hands of those of her blood, they having one child at the time, and in pursuance of the purpose to convey the property to her according to the agreement set forth in the recitation. While the deed indicated the class of persons to whom the property was to go in default of conveyance or will by her, yet she, being clothed with the absolute power of alienation with the right to consume the proceeds, was consequently invested with a fee simple estate which rendered the subsequent inconsistent provisions of the deed inoperative and void.

Wherefore the judgment is reversed, and cause remanded for further proceedings consistent with this opinion.