# Richmond.

## RANDOLPH V. WRIGHT AND WIFE.

### APRIL 8th, 1886.

WILLS—*Construction—Language—Surrounding circumstances—Case at bar.*—Bitter estrangement existed between C. and her daughter R. from 1826 till the mother's death, in 1849. Of R., in her will, C. says: "As to my unnatural daughter, she is not to heir one cent of my property." But between C. and her sons, P. and E., unbroken affection prevailed. In her will, she calls P. "my kind son." Of E., she speaks as "my dutiful son," "my beloved son." By her will dated 1843, she, after giving some legacies, gives all of her property to her two sons, P. and E. By a codicil dated December 8, 1848, she qualified the estate in her property given to her sons with these words: "Should either son die without a will or lawful issue, the surviving son must heir all the property given by me to him." E. died in 1872 without lawful issue and without a will. P., by deed, conveyed the property, in 1874, to H., and after several intermediate alienations, it came to N. V. R. But the daughter, R., contended that under the will E. took a fee simple estate, and that upon his death, without issue and without a will, the estate descended to his heirs, viz: his brother P. and his sister R., in equal parts. And in the action of ejectment by R. against N. V. R. for the real estate—

HELD :

Under the will E. took a *defeasible* fee simple, coupled with a power of appointment by *will*, with remainder over to P., and that his *defeasible* fee simple estate having been defeated, viz: by his death, without issue, living at his death, and he having failed to exercise his power of appointment by will, the remainder to P. is good, and that the title of N. V. R., who claims under P., is also good.

Error to judgment of circuit court of city of Richmond, rendered December 24, 1881, in an action of ejectment wherein Phineas C. Wright and Rosina M. C., his wife, were plaintiffs, and Norman V. Randolph, the plaintiff in error, was defendant.

Opinion states the case.

*W. W. Gordon, G. K. Macon,* and *Christian & Christian,* for the plaintiff in error.

*J. Alfred Jones, Guy & Gilliam,* and *Wood Bouldin, Jr.,* for the defendants in error.

LACY, J., delivered the opinion of the court.

The testatrix, Caroline M. R. Johnson, died on the 6th day of June, 1849, seized in fee of the premises in dispute. By her will, which was probated in the county court of Chesterfield county August 13, 1849, which was executed on the 25th day of January, 1843, she provided as to this property: "I dispose and appoint as follows—that is to say, two-thirds thereof to my dutiful son, Edward A. Johnson, and his heirs forever; one-third, or the balance, to my son, Philip T. Johnson, and his heirs forever. * * * As to my unnatural daughter, Rosina M. C. Martin, she is not to heir one cent of my property."

In 1845, the husband of the testatrix, with whom she had long been at variance—the husband and wife having separated in 1826, and having never been reconciled—died, and devised all of his property to the daughter, the daughter having sided with her father in the family quarrel, with whom she thereafter lived, and ever afterwards adhered to him. And from this state of things there arose between the mother and daughter a bitter estrangement, which continued unabated

and unreconciled down to the death of the mother; and the father giving all of his property to his daughter, gave none to the sons who had adhered to the mother.

In December, 1848, the testatrix made and added to her will a codicil, which was duly executed, by which she provided as follows: "Should either son die *without a will or lawful issue*, the surviving son *must heir* all the property given by me to him." And it is this provision in this codicil which has given rise to this controversy.

Edward A. Johnson, the "*dutiful son*," died in 1872 "*without a will or without issue*." Philip T. Johnson, the surviving son, in 1874, sold the land in dispute, which, by successive alienations, has passed into the hands of the plaintiff in error.

In 1877, the "*unnatural daughter*," Rosina M. C. Martin, now Rosina M. C. Wright, having again married, together with her husband, Phineas C. Wright, instituted an action of ejectment against the plaintiff in error for the premises claimed in the declaration, which is one undivided third of a lot of land in the city of Richmond, in the circuit court of the said city. The facts being agreed, the case was submitted to the court, the whole matter of law and fact to be heard and determined. The court gave judgment for the plaintiff in the action; whereupon the case was brought here by writ of error. The claim of the defendant in error is founded upon her rights as heir-at-law of Edward A. Johnson. The plaintiff in error claims that Edward A. Johnson, having died without a will and without issue, his estate in the property devised by his mother to him ceased and determined upon his death, the contingency provided in the will for the determination of his estate having happened.

The circuit court held the limitation in the will upon the estate given Edward A. Johnson to be repugnant and void; and it is argued by the counsel for the defendant in error that the whole estate was disposed of by the will written in 1843,

and that the effort in the codicil to limit that estate in 1848 is void, as repugnant.

The English rule concerning wills, that as to land the testator is supposed to speak at the date of his will, and as to personalty at the time of his death, does not prevail with us. By our law "a will shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will," chapter 118, section 11, V. C.; and the codicil and will together constitute the will; the codicil is a supplement to a will, annexed to it by the testator, and is to be taken as part of the same, either for the purpose of *explaining,* or *altering,* or adding to, or subtracting from, its former dispositions.    2 B. C. 500; 2 T. C. 402.

The codicil and will together make the will, and whatever Edward A. Johnson took, he took under the provisions of both. Under both he took, not a fee simple, as by the will, "to my dutiful son, E. A. J., and his heirs forever"; but to that provision it is subsequently added that if he should die without a will or lawful issue his surviving brother should heir all the property given by the testatrix, that is: "I dispose and appoint as followeth—that is to say, two-thirds thereof to my dutiful son, Edward A. Johnson, and his heirs forever; one-third or the balance to my son, Philip T. Johnson, and his heirs forever. Should either son die without a will or lawful issue, the surviving son must heir all the property given by me to him."

It is intimated by the defendant in error that the survivorship here referred to is relative to the death of the testatrix. This question is one of intention purely, and the intention here is too obvious to admit of serious discussion. It obviously refers to the longest lives of the two brothers. If one of two

sons die, the surviving one shall heir, &c., are words which are meaningless only when applied to the contingency of their surviving their mother, and plainly refer to the longest liver of the two sons. *Hansford* v. *Elliot,* 9 Leigh, 94; *Newlin* v. *Ayscough,* 19 Ves.; *Russel* v. *Long,* 451; 2 Jarman on Wills, 736, 738, 740, and 741; *Toafe* v. *Conwer,* 10 H. of L. C. 78.

In the construction of wills, the cardinal rule is to collect the intention of the testator from the whole will taken together, without regard to anything technical or to any particular forms of expression; and if the intent be lawful—that is, does not create perpetuities or violate any rule of law—then the courts will give it effect. *Shelton* v. *Shelton,* 1 Wash. 53. And where from the context of the will the testator has explained his own meaning in the use of certain words, the courts will take that explanation as their guide without resorting to lexicographers to determine what is the meaning in the abstract, or to adjudicated cases to discover what they have been held to mean in other wills.

Parol evidence of the circumstances, situation and connection of the testator, and his transactions between making his will and his death, are admissible to throw light on his intention. *Shelton* v. *Shelton, supra; Kennon* v. *McRoberts, Id.* 99–102. When we observe the use made by the testatrix of the word "heir" throughout, the meaning is obvious—"My unnatural daughter is not to heir"—the surviving son is to heir. In both, the obvious meaning is "to have," "to succeed to," "to receive." The executory limitation provided in the will as to the shares left the sons, must be considered with reference to our law in force at the time the will was executed.

Judge Tucker, in stating the effect of the different Virginia acts, puts the case of a "devise to A., and if he die without issue, then to B. and his issue," and says, if the devise and death of the testator was since 1819, A. would be tenant in fee simple, subject to have his estate defeated by leaving no issue

at his death, or within ten months after, and B.'s interest would be a good executory devise of a fee.

Thus, by the act of 1819, the whole estate would be tied up in his hands effectually during his life, since, upon his death without issue then living, his estate would be defeated, and B. would take. And Judge Tucker observes that, "We see, too, that in this way this act returns in no small degree to the ante-revolutionary notions of fettering estates." T. Com. 158, Book 2. See also act of 7th October, 1776; act of 1785, in effect January 1, 1787; and act of 1819, in effect January 1, 1820, V. C., chapter 112, section ten, which is as follows:

"Section 10. Every limitation in any deed or will contingent upon the dying of any person without heirs, or heirs of the body, or issue, or issue of his body, or children, or offspring, or descendant, or other relative, shall be construed a limitation, to take effect when such person shall die not having such heir, or issue, or child, or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it."

In the case of *Bell* v. *Gillespie*, 5 Rand. 273, this act of 1819 was brought under the consideration of this court in an interesting way. In that case the will under examination was made between January 1, 1787, and the 1st day of January, 1820.

In the following case, *Broaddus* v. *Turner, Id.*, 308, heard with the foregoing, the will was made between 1776 and 1789.

In *Bell* v. *Gillespie* the act of 1819 was construed and held inapplicable. See in this connection the case of *Clarkson* v. *Booth*, 17 Gratt. 490, to which I will only refer.

In the case of *Elys* v. *Wynne*, 22 Gratt. 224. In that case the will was made since the first day of January, 1820. In

that case the testator gave to his daughter, D., "a tract of land to her and the heirs of her body; but should D. die without heir, as above-mentioned, my wish is that said land shall return to my other heirs, and be sold, and the moneys arising from the sale to be equally divided among all my heirs." D. sold the land and died without issue. The court held that D. took under the statute a fee simple estate in the land *defeasible* upon her dying without a child living at her death; that the deed of D., conveying the land, although purporting to convey the fee, only conveyed her interest in the land.

Judge Moncure, after referring to and reciting the twenty-fifth and twenty-sixth sections of the act of February, 1819, says: "The said limitation would be valid when limited upon an estate in fee simple, as aforesaid, provided the said limitation, according to the law of the land and the true intent and meaning of the testator, was to take effect at the death of the said Sarah Dougherty."

Now, as the limitation aforesaid is, by the said sixth clause of the will, made to depend upon the dying of the said Sarah Dougherty without heir of her body; therefore, by the force and effect of the said twenty-sixth section, such limitation is to be held and interpreted a limitation, to take effect when such person shall die not having such heir living at the time of the death or born to her within ten months thereafter, unless the intention of such limitation be otherwise expressly and plainly declared on the face of the will creating it. Certainly no such express and plain intention is declared on the face of the will in this case, but the contrary intention rather appears.

We have now to consider the effect of the provision in the will, if "either son die without a will."

We have been referred to many cases and entertained with a learned argument to show that "as here was a previous devise of an absolute ownership, the fee simple, 'to my dutiful

son, Edward A. Johnson,' and his heirs forever, not the mere life estate to this fee, to this absolute ownership previously devised, was incidental the power of disposal"; and the question is argued here as if the property of Edward A. Johnson, left him under his mother's will, was his absolutely; and the will is commented on thus: " I prescribe, though the property is his absolutely while he lives, &c., when he comes to die, I prescribe who shall be his heirs," &c. Now, if there had been ·no codicil, the property would have been his under the will; but there is a codicil, and that is a part of the will itself, and that limits the estate of Edward A. Johnson, upon the happening of a future contingency, which was a conditional limitation— an executory limitation which rendered his estate liable to be defeated upon the happening of a contingency, which contingency happened.

We cannot shut our eyes to the law, which provides that a will shall speak as if executed immediately before the death of the testator. That being so, the will in this case provided nothing until after the codicil was executed, and the two must be taken together as one whole, and the act of 1819, V. C. ch. 112, sections nine and ten, must be kept in view. And the learned counsel insists that the views he urges have been settled nowhere more firmly than in Virginia, from *Shermer* v. *Shermer*, in 1 Washington, 266, to *May* v. *Joynes*, 20 Gratt. 692. In the first named case we find the court as saying : " In support of this position several cases have been cited, but they seem to verify the saying of a judge, 'that in disputes upon wills cases seldom elucidate the subject, which, depending upon the intention of the testator, to be collected from the will and from the relative situation of the parties, ought to be decided upon the state and circumstances of each case.' To which," says the court in that case,. " I will add that I have generally observed that adjudged cases have

more frequently been produced to disappoint than to illustrate the intention ; and I am free to own that when a testator's intention is apparent to me cases must be strong, uniform and apply pointedly before they will prevail to disappoint that intention."

And further, speaking of the cited case of *Target* v. *Gant*, 10 Mod. 402 : " So that, if this case apply at all, it proves that the testator's intention shall make such words, *either an estate for life, or an inheritance, as shall best promote that intention.* He (the testator) does not give her *the power to dispose, but to name the person or persons she might choose to succeed to her part.*"

This case, then, it seems, can be aptly cited as authority for itself only, all other force for the case being expressly disclaimed. It is certainly no authority for the contention of the defendant in error.

As to the case cited of *May* v. *Joynes*, the same might be said. That case was decided in 1857, and not ordered to be reported by the judges who decided it; perhaps regarded by them as authority only for itself, and it was not reported until fourteen years after, when, as the reporter states, it was reported at the request of some of the judges—one of the judges of this court, at that time, being a party to the cause. But whatever may be its authority, it is easily distinguished from this case by the learned counsel for the plaintiff in error.

Mrs. May had the right to dispose of and sell the property during her life, and leave it by will, and the limitation over was of whatever remained at her death, and the limitation over was held void for uncertainty. And the learned counsel for the appellant in that case won his case here, and reversed the court below, upon the argument that the will showed a *clear intent* in the testator to give to his widow an absolute control over his whole estate, and vests in her absolute property.

The cases of *Riddick* v. *Cahoon*, 4 Rand. 457, with the provision "that the property that shall be left remaining at her death;" *Burwell* v. *Anderson*, 3 Leigh, 348, with the provision "by will or otherwise may have the absolute disposal of;" *Nelson* v. *Cooper*, 4 Leigh, 408, with the provision, "if he should die without a son and not sell the land;" *Brown* v. *George*, 6 Gratt. 424, with the provision, "so much of the property as might be in existence at the death of the first taker;" *Cole* v. *Cole*, 79 Va., "that may be on hand," "giving the wife the absolute disposal of the personalty;" *Carr* v. *Effinger*, 78 Va. 147, with the provision, "at the death of my wife, what bonds she may not have used, I give," &c., are all distinguishable from this case.

Here, there is no power of disposal, no right to sell, or to consume is given; but the estate given is expressly limited upon the condition, the contingency of dying without issue, to which is coupled a power to make a will. Under our statute the will devised a defeasible fee, an estate liable to terminate, expressly limited upon a contingency, which happened, coupled with the right to make a will and to appoint the succession.

If the intention of the testatrix is to be looked for and accepted, as our guide in this case, Edward A. Johnson did not take an absolute estate, but a limited estate, without the words "without a will;" he had only a life estate, and he had no more right to sell or dispose of the property given to him than had Sarah Dougherty, in *Elys* v. *Wynne, supra.* He could have sold only his defeasible fee, limited upon a contingency, liable to defeat and to determine his estate, which happened, as it did, in her case. To this was added the power to appoint, added not to a fee simple, but to a limited estate.

Whatever may be the rule of law as to remainders over, executory limitations upon an absolute estate in fee, coupled with the power of disposal absolutely *inter vivos*, or by will,

there is no case to which we have been referred where a power of disposal by will, added to an estate for life, or a limited estate, such as a defeasible fee, has been held to enlarge the limited estate into a fee simple, an absolute estate in the first taker.

All the cases of the first class seem to be founded upon the intention of the testator. But such intention cannot be suggested as to the second class, because such intention is clearly repugnant to the declared intention, where the estate is limited.

In this case it is expressly declared that the estate shall be limited upon the expressed contingency, and what is there repugnant or inconsistent with the devise to the first taker that he shall have the power to appoint the succession after his estate has expired by the termination of his life?

It is clear, we think, that by reason of the express limitation in the first taker, he can have no absolute estate growing out of a power to appoint the succession.

In the case of *Keith* v *Leymann,* cited by Mr. Keyes on Chattels, the testator gave all his personal estate to his wife for life, and from and after her decease one moiety thereof was to be at her entire disposal, either by will or otherwise; the other moiety he gave to other persons. The master of the rolls denied that there was any ·distinction in this respect between real and personal property; and said that by reason of the express estate for life given to the widow, she did not take the absolute interest, but had only a power of appointment, and held *Wain* v. *Farrer* to be an authority for the position. 4 Rus. 203; *Caleb* v. *Field,* 9 Dana, 346.

Mr. Keyes says, "Section 168: But, without pursuing the matter, we may assert that the better opinion is, that a gift to one expressly for a limited period, with an absolute power of disposition, does not pass the whole property; and therefore then a gift over, in default of disposition, is not repugnant to

the first gift." *Pulliam* v. *Byrd*, 2 Strob. Eq.; *Smith* v. *Hilliard*, 3 Strob. Eq. 214.

"Section 169.   It cannot, however, be admitted that principle requires the first gift to be expressly for a limited period; but it may well be contended that principle requires no more than that the first gift shall be for a limited period, utterly disregarding the fact whether it is so expressly or by implication."

"Section 170. When there is a gift generally to A, and an absolute power of disposition is added, the addition of the power is simply nugatory; for by the general gift the absolute power of disposition passed as an incident to the interest. But this does not apply to cases in which the first gift is for a limited period, either expressly or by implication. Thus, if there be a gift to A, with the power of disposing by will, but if A die without making such disposition, then to B, the gift to A is clearly but an interest for life, with a power of disposition by will. The addition of the power itself furnishes sufficient evidence that such was the intention of the donor, for *expressio unius, exclusio alterius*, and, therefore, the donor did not intend the absolute power of disposition should pass. Besides, a gift to A, and after his death to B, passes by construction but a gift for life to A; and there is no reason for saying that the addition of the power shall by implication enlarge the interest. So, if there be a gift for life with a general power of disposition at death, it is but an interest for life with a power of disposition by will." *Archibald* v. *Wright*, 9 Sim. 161.

√Upon the best consideration we can give this case we are of opinion that, while it is true that the power of disposal by will or otherwise is incident to an absolute fee simple estate, and therefore adds nothing when annexed, which was not already an incident inhering in that degree of estate; yet that the power of absolute disposal by will is not an incident inhering

in an estate for life only, nor in a defeasible fee, nor in any limited estate; and that in this case if the power of disposition had not been granted by the will it would not have been an incident inhering in the limited estate granted, to-wit: a defeasible fee, liable to be defeated and determined by the happening of a contingency of the failure of issue, which contingency actually happened, and determined such limited estate; and that the power of disposing by will did not annex an incident of the estate already granted, and therefore to be held to be nugatory, but did annex a power not otherwise granted, and not otherwise attached to the estate granted; a power of appointment by will, added to an estate devised subject to an express limitation, whereby such estate is defeated and determined upon the contingency of his dying without issue. Such an estate can be held to be an absolute estate in fee simple only by disregarding the plain words of the will, to say nothing of that regard to the intention of the testator, to be gathered from the whole will, and then followed as the polar star in all effort to construe the wills of the dead.

It is plain in this case that the intention of the testatrix was, and the plain and clear effect of the words used is, to be held to devise to her son Edward an estate liable to be defeated and determined upon his dying without issue. That contingency happened. The power of appointment was never exercised. Edward died intestate, and the estate devised to him having determined, the property held by him during his life his brother Philip is entitled to have and receive under the will of their mother, Caroline M. R. Johnson, deceased, and the daughter, Rosina M. C. Wright, has no valid claim thereto.

We think the circuit court erred in its judgment in this case, and the said judgment must be reversed and annulled.

JUDGMENT REVERSED.