## Richmond.

### FLEMING v. KELLY AND ALS.

#### MARCH 10th, 1887.

*Absent*—LEWIS, P.

1. WILLS—*Construction—Case at Bar.*—Testator by his will gave to his mother $1,000 in cash and a life-interest in a certain house and lot ; to his wife, besides what comes to her by right of dower, $2.000 in cash and his watch ; to his daughter all the rest of his estate, real and personal. By codicil he revoked so much of his will as gave his mother the life-interest, and in lieu thereof gave her $250 per annum (to be paid from the money for which the house is rented) ; and directed that his wife and daughter should occupy and control it, subject to said rental to be paid out of the personal or other estate of his wife.

HELD :

The wife and daughter were entitled to occupy the house and lot during the continuance of the annuity to testator's mother ; upon the death of his daughter, living his wife, the wife is entitled to occupy it during the continuance of said annuity ; after the cessation of the annuity by the death of his mother, the house and lot is to belong to the daughter under the will, or those claiming under her, subject by law to the dower right of the wife, until that has been satisfied in full by the assignment of dower, as the law directs, in this or other real estate of the testator.

Appeal from decrees of circuit court of city of Lynchburg entered on 25th January, 1884, and on 12th November, 1885, respectively, in a suit wherein Mary Roberta Fleming, an infant, who sues by George W. Fleming, her father and next friend, and said George W. Fleming, in his own right, are plaintiffs, and John Kelly and Elizabeth A., his wife,

Nancy Morrissey, and James M. Casey as executor of James Morrissey, deceased, are defendants. The decrees were adverse to the plaintiffs and they appealed to this court.

Opinion states the case.

*R. G. H. Kean* and *S. Griffin,* for the appellants.

*Kirkpatrick & Blackford,* for the appellees.

LACY, J., delivered the opinion of the court.

The controversy here is concerning the true construction of the will of James Morrissey, deceased. The said James Morrissey died in 1868, leaving surviving him his widow, Elizabeth A. Morrissey, and an infant daughter and only child, Mary Roberta Morrissey, and his mother, Nancy Morrissey, all of whom are beneficiaries under his will. The provisions of his will, necessary to be considered, are as follows: By the will he gave his mother $1,000 in cash, and a life-interest in a certain house and lot situated in the city of Lynchburg, at the corner of Eleventh and Main streets. To his wife, besides what comes to her by right of dower, $2,000 in cash, and his watch. To his daughter he gave all the rest of his estate, real and personal. The will was dated the seventeenth of December, 1867. On the next day there was a codicil, by which he provided for the succession, upon the contingency of his daughter dying under age, to his mother, if living, and, if not, to his brothers and sisters. On the sixth of July, 1868, there was another codicil, charging the legacy left his wife upon his whole estate, real and personal. And on the ninth day of July, 1868, there was a codicil executed by which he provides: "(1) I do hereby revoke so much of item second in said

will as gives to my mother, Mrs. N. Morrissey, a life-interest in my house and lot, situated in the city of Lynchburg, at the corner of Eleventh and Main streets. In lieu thereof I leave to my mother, Mrs. N. Morrissey, the sum of two hundred and fifty dollars per annum, (*to be paid from the money for which the house is rented,*) for her natural life; and it is my will that my wife, Elizabeth Ann Morrissey, and my child, Mary Roberta Morrissey, shall occupy and control the said property, subject to the aforesaid annual rental of two hundred and fifty dollars, to be paid to my mother out of the proper personal or other estate of my wife, Elizabeth Ann Morrissey." The whole controversy in this case is concerning this provision, which is set out in full. The testator died soon after the execution of this codicil, and his will, with the codicils attached, was admitted to probate on the fourth of August, 1868, following. The wife married the appellee, Kelly, in October, 1869, and the daughter lived with them at the house on the corner of Eleventh and Main streets (which had been the home of the testator, and was their home) until October 17, 1878, when she married the appellant, Fleming, and moved away, and died in July, 1879, leaving one child, Mary Roberta Fleming, who, after her mother's death, has had her home for two years with her grandmother, Mrs. Kelly. The house on the corner of Eleventh and Main streets is used for a store in the lower story, and for a residence in the upper. It was used in both capacities by the testator in his life-time, and has been so used by his wife and her husband since that time.

On the twenty-fifth of January, 1884, the suit was institued by the said Fleming in his own right and as guardian and next friend of his infant child, by filing the bill in term, the answer of the defendants being simultaneously filed, and the case was docketed and heard as a friendly suit for the construction of the will of the testator, James

Morrissey, deceased, when the court, proceeding to construe the will, held that the house and lot on the corner of Eleventh and Main streets was charged with the annuity of $250 to Mrs. N. Morrissey, out of the rents of the said house; and that the wife of the testator, Elizabeth A., and his daughter, Mary Roberta, then deceased, were entitled to the residue of the issues and profits arising from said property; and that, at the death of Mrs. N. Morrissey, the said property was to pass to the daughter under the residuary clause of the will, and so decreed; and, further, that the said wife, Elizabeth A., was entitled to dower in all the real estate of which her husband died seized; appointed commissioners to lay off and assign the same, and make report; and directed one of the commissioners in chancery of the court to take an account of the rents and profits of the house and lot since the termination of the joint occupancy thereof by the mother, wife, and child of James Morrissey, deceased.

On the nineteenth of November following, John Kelly and wife filed their petition for a rehearing of the said decree, setting forth as error the decree for an account of rents and issues of the house and lot on Eleventh and Main streets after the termination of the joint occupancy of the mother and child; claiming that the said house and lot was intended as a home for his family, to be used as such, subject to no other charge than the annual rent to be paid to the mother of the testator out of the personal estate of the wife. The court reheard the said decree, and, on the twelfth day of November, 1885, rendered a decree, by which the first decree was declared to be erroneous, so far as it construes the will of James Morrissey and the codicils attached, and held that the wife and daughter, under the said will, were to hold this house and lot during their lives as joint tenants, which interest would not determine on the death of Mrs. N. Morrissey, and so decreed, setting aside

the decree of January, 1884, so far; held that the wife, Elizabeth A., was entitled to dower in this house and lot, in addition to this life-interest, which was devised to her by the will; that the wife was to be charged with rents in the property on Eleventh and Main streets before her dower was assigned therein, and that she was liable for these rents, although she had not occupied the property to the exclusion of her daughter, and allowed credit to the occupants of the house for certain amounts, in the nature of repairs to the property; and disallowed all charges for remodelling and additions. The real estate of the testator was valued at $13,050; the house and lot in question at $5,000. The personal estate is stated to be large, but the record does not show the amount, and there is no controversy concerning it, the legacies having been all paid.

The appellant, Fleming, by, etc., appealed from these decrees, and assigns as errors (1) that the decree of January, 1884, was erroneous in confining the account of rents and profits from the time when the joint occupancy of mother and daughter terminated; (2) that the court erred in setting aside so much of the decree of January, 1884, by the decree of November, 1885, as held that the interest of the wife terminated with the life of Mrs. N. Morrissey, the annuitant; (3) that the decree of January, 1884, directed an assignment of dower to the widow in all the real estate; (4) that the court erred in allowing the occupants of the house for repairs, etc., in the decree of November, 1885. The appellees assign error in both decrees, both that of January, 1884, and that of November, 1885, in construing the will in each as has been set forth.

The first and main question to be settled in this case is, what is the meaning of the stated provision in the codicil revoking the second item of the will? It will be remembered that, by the third item of the will, the testator gave his wife a legacy of $2,000 and his watch, in addition to

what she was entitled to by right of dower; and that, by the first item of the first codicil, he had provided for the succession to his mother or his brothers and sisters, as the survivorship should determine, in the event of his daughter dying in infancy; that by the seventh item of the will he had left the residue of the estate to his daughter. There is no reference to these, nor any indication of any change of purpose as to these, to be found in the third codicil. The first item in the third codicil professes to revoke the second item of his will *so far* as it gave to his mother, Mrs. N. Morrissey, a life-interest in the house and lot on Main and Eleventh streets, and provides, in lieu of that, as follows: "In lieu thereof I leave to my mother, Mrs. N. Morrissey, the sum of two hundred and fifty dollars per annum, to be paid from the money for which the house is rented, for her natural life." There can be no dispute as to how long this part of the codicil is intended to operate; it is expressly limited to the life of his mother. He then proceeds to provide how and by whom this annuity is to be paid, and says further: "And it is my will that my wife, Elizabeth Ann Morrissey, and my child, Mary Roberta Morrissey, *shall occupy and control* the said property, *subject to the* aforesaid *annual rental of two hundred and fifty dollars.*" How was this to be paid, and by whom? The testator provides: "*To be paid to my mother out of the proper personal or other estate of my wife, Elizabeth Ann Morrissey.*" That this control and occupancy of the wife and daughter should continue as long as the rental of $250 was to be paid, is obviously the intention of the testator; for he provides that they should so occupy and control, subject to the said rental of $250. This can be paid, and was intended to be paid, to the mother (and it is expressly so provided) during the period of said mother's life. If it was intended that this control and occupancy should be for the life of the mother and daughter, as the circuit court holds in its

decree of November, 1885, *after the death of the mother,* Mrs. N. Morrissey, it could not be held as the codicil provides, but must be held in some other way. No word in the codicil hints at any other holding than "*subject to the aforesaid annual rental of two hundred and fifty dollars.*" When the mother dies, and they do not *control and occupy* subject to this rental, if they hold it, by what provision in the codicil, and how are they to hold ? This question cannot be answered from any provision in the codicil. There is no provision on the subject, unless we go outside of the codicil; and I think we are not at liberty to go outside of the will to find any provision concerning it. But the codicil being now silent, the mother being dead, we will look to the whole will to determine, if possible, what was the intention of the testator when the codicil had been fully operated. A part of the will had been revoked by this codicil. What part? The codicil answers: "I do hereby revoke *so much* of item 2 in said will as gives to my mother, Mrs. N. Morrissey, a *life*-interest in my house and lot, situate in the city of Lynchburg, at the corner of Eleventh and Main streets." This is all that is revoked. The provision in lieu thereof we have seen. The legacies provided for by the will have been fully paid. How is this house and lot on Eleventh and Main streets to be held, after the expiration of the provision made concerning it in the codicil, which was in lieu of the provision of the will which gave it to the mother for her life ? The will must answer, as everything belonging to the testator is covered by the terms of that instrument. The will does answer. The wife is to have $2,000 in addition to her right of dower. This is what the will says as to the wife. She had a dower-right in all his real estate, of which this is a part. When her dower rights have been satisfied, the will provides: "All the rest of my estate, real and personal, I give to my daughter, Mary Roberta Morrissey," etc. The answer to

this question, as to how this house and lot on Eleventh and Main streets shall be held, after the manner of holding in the codicil has been fully operated, that is, " subject to the aforesaid annual rental of two hundred and fifty dollars, to be paid to my mother," is : The said real estate is to belong to the daughter under the will, or those claiming under her, subject by law to the dower-right of the wife, until that has been satisfied in full by the assignment of dower, as the law provides, in this or other real estate of the testator.

The circuit court holds that the widow was entitled to dower in this, and also one-half interest therein for her life, as joint tenant. This is a construction of the will wholly unauthorized by the terms of the will itself, and is clearly erroneous ; but, perhaps, was logically inevitable after the erroneous determination that the wife, under the terms of the codicil, took a life-interest in one-half of this house and lot, although the will had provided that she was to have $2,000 in addition to what the law gave her. In arriving at this conclusion, we have kept in view the well-understood rules which must govern in the construction of wills, chief among which is that the intention of the testa-tor must be looked to as the main guide. These rules have been recently stated in this court in the late case of *Ran-dolph* v. *Wright*, 81 Va. 608, to which case I will refer, with the cases there cited. The questions concerning the obligation of one joint tenant, who receives more than his co-tenant, have been recently considered by this court in the case of *Paxton* v. *Gamewell*, 82 Va. But in the view which I have taken of this case, those questions do not arise. Having determined the duration of this " occupa-tion and control" by the wife and daughter of this prop-erty, this question remains to be considered: What are the rights *inter sese* of wife and daughter, or those claiming under the latter, the joint control and occupancy having

terminated by the death of the daughter, and the mother, Mrs. Nancy Morrissey, being still living? Upon what terms, under the will of James Morrissey, must the wife occupy and control the property until the death of her mother? The will provides that she shall hold it subject to the annual rental of $250, to be paid by her out of her proper personal or other estate.

But it is insisted by the argument, which seeks to maintain the doctrine of joint tenancy held by the circuit court, that this is unequal and unjust, because the house is worth a great deal more,—the rent of the store and the residence above being seven or eight hundred dollars, so far as an estimate of value goes,—and that she should account to the estate of the daughter for one-half of the surplus; that is, hold it subject to the annual rental of $250, to be paid to the mother, and several hundred dollars to be paid to somebody else. There is no authority for this in the will. The will does not give this house and lot to the wife and daughter for their own lives, nor for any other person's life. It directs that they shall occupy and control it for a stated purpose. They did literally do so as long as the daughter lived, and, she being dead, she cannot occupy and control it any longer for that or any other purpose; but the wife can and does hold it for this purpose, and subject to that provision.

Whether the charge placed on the house and lot by the testator is too great or too small is not the question. He alone had a right to fix any charge upon it, and he alone could determine the amount; and that he intended that this should be the exact charge, no more no less, is obvious from the concluding line of the first item of the third codicil, (he had already provided that this charge should be paid from the money for which the house rented in the first part of the said first item of the third codicil,) "*to be paid to my mother out of the proper personal or other*

*estate of my wife, Elizabeth Ann Morrissey,"* having reference, when he said to be paid from the money for which the house is rented, to the renting out of the store room; but, as that might not be rented out at all, he adds, "to be paid out of the proper personal or other estate of my wife." His object and intention was to make the annuity to his mother a safe provision, entirely secure, as he had in the second codicil charged the $2,000 legacy given to his wife upon his whole estate, real and personal, to make that entirely safe. If, from any cause, the rent should be less than $250 for this house, the annuity might fail; therefore it is provided that it should be paid out of his wife's proper personal or other estate. If the store and house should rent for less than $250, would there be any charge upon the daughter's estate for the deficiency? There would be none. The will provides none. If the store and house should rent for less than $250, would there be any charge upon the wife for the deficiency? There would be. The will so provides. The wife might refuse to occupy, and no other person might rent, and the property might be unproductive. Would the annuity fail in such case to the mother? Not at all. The wife is required by the will to pay in any event. Is there any other charge upon her if she does occupy and control it? There is no other under the will, and no other can be fixed upon her. The testator dedicated this property to the payment of the annuity to his mother, and provided a way to do it which would not probably burden his wife and daughter, and not too heavily burden their property, and his will should be enforced by the courts as he made it. The decrees complained of and appealed from here are erroneous, and should be reversed and annulled, and a decree entered remanding the cause for further proceedings and final decrees in accordance with the foregoing views.

DECREES REVERSED.