# Staunton

## ROSS AND OTHERS v. ROSS, EXECUTRIX, AND OTHERS.

### September 11, 1913.

Absent, Keith, P., and Whittle, J.

1. WILLS—*Object of Construction—Expressed Intention of Testator.*—
   The object in construing a will is to arrive at the true inten-
   tion of the testator as gathered from the language used; that
   is, his expressed intention, disclosed by the meaning of the
   words used, when properly interpreted, rather than his pre-
   sumed or supposed intention.

2. WILLS—*Construction—Technical Words.*—In construing wills the
   words used should be given their ordinary and usual significa-
   tion; but where technical words are used, they are presumed
   to be used technically, and words of a definite legal signifi-
   cation are to be understood as used in their definite legal
   sense, unless the contrary appears on the face of the instru-
   ment.

3. WILLS—*Construction—Case in Judgment—Personal Property—
   Choses in Action.*—A testator of little learning, but of fine sense
   and large business experience, and familiar with the difference
   between real and personal property and the different kinds of
   personal property, made a holograph will. By it he gave to
   his wife a designated piece of real estate and "three thousand
   dollars in cash from any money that may be to my credit at
   the time of my death, and all of my personal property of
   every description." He gave to his youngest daughter two
   designated pieces of real estate, and then requested that all
   other property owned by him, except such as he had given
   away in the will, be kept together until his youngest child
   became of age, and then equally divided amongst all of his
   children. He appointed his wife agent "to take in charge all
   of my property and collect all rents and make improvements
   and give to herself and children and unmarried daughter a
   support out of any rents she may collect until the youngest
   child becomes of age." His estate consisted of real estate,
   household and kitchen furniture, a large amount of bonds and
   notes, many of which were not due at the time of his death,
   and less than $1,000 in bank.

*Held:* The surviving wife is entitled to the entire personal estate of the testator, including choses in action, and that the provision for support means support according to their station in life, and if the net rents are more than sufficient for that purpose, the surplus over a support should be preserved for distribution among all the children when the youngest reaches maturity.

Appeal from a decree of the Circuit Court of the city of Lynchburg. Decree for the defendants. Complainants appeal.

*Modified and Affirmed.*

The opinion states the case.

*Smeltzer V. Kemp* and *John L. Lee,* for the appellants.

*F. S. Kirkpatrick,* for the appellees.

Harrison, J., delivered the opinion of the court.

The late Eugene E. Ross departed this life at his home in Campbell county in June, 1912, leaving surviving him his wife, Lizzie I. Ross, and nine children. The deceased was twice married, and seven of the children surviving him were the offspring of his first marriage, the remaining two being the children of his second and surviving wife, the youngest of these two being born after the father's death.

The bill in this case was filed by the six adult children of the first marriage for the purpose of having construed the holograph will left by Eugene E. Ross, dated August 10, 1905, and duly probated in June, 1912. The will mentioned is as follows:

"I give to my Wife Lizzie I. Ross one Duble Tenemt House on the Corner of 8th and Wise Street in Lynchburg, Va., and three thousin Dollars in Cash from eny Muney that may bee to my Credet at the time of my Deth and All my pursnal Property of Every Discription I Give to Doh-

erty Ross my youngest Daughter two houses and Lots in Campbell County none as Lots 10 and 11 in Fair ground Adition Saime Lots as Come to me from John A. Faulkner.

"it is my Request that all other Property ownered By me Shall bee kept to Gether Except thee Carpented Chops located in Park avenue Adition whitch I wood Advice the Saile as Soon as Poseble all other Property Except sushas I have Given a way in this will Shall be Ceped to Gether untell my youngest Child become of Age then Equly Devided beleen all of my Children including Doherty Ross and I appoint my wife Lizzie I. Ross my agent to take incharge of all of my Property and Corlect all Rents and make Improvements and give to hirsif and children and unmared Dauter a Support out of Eny Rents She may Corlec untell the youngest Child become of Age I further more Request that no Bond be Required of Hir in wilness of the Above," etc.

It is apparent from the testator's spelling and punctuation that he was a man of little learning. The record, however, shows that he was a man of fine sense, excellent judgment and good business qualifications who had acquired by his thrift and business sense an estate valued at more than $50,000, which was nearly equally divided between real and personal property. While his spelling and punctuation are bad, the intention of the testator is expressed with reasonable clearness.

The present controversy concerns chiefly the first sentence of the will, which is as follows: "I give to my wife, Lizzie I. Ross, one double tenement house on the corner of 8th and Wise streets in Lynchburg, Va., and three thousand dollars in cash from any money that may be to my credit at the time of my death, and all my personal property of every desciption."

At the time of the testator's death he had securities, principally deeds of trust or mortgages, aggregating about

$23,000, and something over $1,000 in cash to his credit in bank. The interpretation which the complainants, who are the appellants here, insist upon giving to the foregoing language employed by the testator is that the cash to his credit at the time of his death included the bonds and notes left by him, and that the whole, cash on hand and the securities left, must be treated as one fund out of which the $3,000 given his wife in cash from any money he might have to his credit must be paid, that the testator did not use the term "personal property" in its technical sense, but intended by the words "all my personal property of every description" to give his wife only the tangible household property; that if he had intended to give her all his personal property of every description, there would have been no occasion for the provision of $3,000 in cash from any money that might be to his credit at the time of his death, as the term personal property technically used would cover the $3,000 in cash as well as the notes and bonds.

In *Allison* v. *Allison,* 101 Va. 543-4, 44 S. E. 906, 63 L. R. A. 920, it is said: "The object in construing wills is to arrive at the true intent of the testator, but that intent is to be gathered from the language used, for the object of construction is not to ascertain the presumed or supposed, but the expressed intention of the testator: that is, the meaning which the words of the will, correctly interpreted, convey. *Wooten* v. *Redd's Ex'or,* 12 Gratt. (53 Va.) 206; *Hatcher* v. *Hatcher,* 80 Va. 171; *Waring* v. *Bosher's Admr.,* 91 Va. 286, 21 S. E. 464.

"In construing wills the words used should be given their ordinary and usual signification; but, where technical words are used, they are presumed to be used technically, and words of a definite legal signification are to be understood as used in their definite legal sense, unless the contrary appears on the face of the instrument. *Waring* v. *Waring,* 96 Va. 641, 32 S. E. 150."

Guided by these well settled principles, we are of opinion that the construction contended for by the appellants is strained and not warranted by the language used, and would wholly fail to effectuate the manifest intention of the testator. In addition to the presumption that the testator understood the technical meaning of the term "personal property" and that he used the words "all my personal property of every description" in their usual and ordinary sense, and not in the restricted sense suggested by the appellants, it is shown of record that he had enjoyed large and unusual opportunities for acquiring a thorough knowledge of the distinction which the law makes between personal and real estate. For six years he was an active and influential member of the board of supervisors of Campbell county. In this capacity he frequently examined with care the tax lists which are divided into two classes and listed in separate books, one for real estate and the other for personal property. He was at one time the assessor for his district, lying adjacent to the city of Lynchburg, which paid at that time about one-half of the taxes gathered from the entire county. In this capacity he had to assess separately both real and personal property. His opportunities, therefore, for knowing what was meant by the term "personal property" and what was included therein, were exceptionally good. His practical knowledge of the subject is further shown by the fact that he listed with the commissioner of the revenue, under the head of personal property, to be taxed, $8,500 of the bonds that are now the subject of dispute. It is not conceivable that a man of the testator's large business experience and fine sense would have given his wife all of his personal property of every description, when he had bonds and notes, intending by the use of such broad language to include only tangible property such as household and kitchen furniture. Nor is it a reasonable supposition that he intended to include bonds

and notes not due in the language, "cash from any money that may be to my credit at the time of my death."

There is no such conflict between the gift to his wife of $3,000 in cash from any money to his credit, and the gift of all his personal property of every description, as to justify the interpretation contended for by appellants, which would defeat the manifest intention of the testator. The testator doubtless realized that his wife, who was to have the care and support of his younger children, would need at once ready cash, and his purpose was to supply that need by providing that out of any money to his credit at the time of his death she should have not exceeding $3,000. It turned out that he had to his credit in bank at the time of his death little more than one-third the amount named, which is all that his wife can get under that provision. This result was probably intentional on the part of the testator; at any rate there is no occasion to speculate as to the proper disposition of the surplus cash had he left more than $3,000 of money to his credit.

The effort to include bonds and notes not due for several years after the testator's death in the language "cash from any money to my credit at the time of my death" is not in accord with common experience. The testator's good sense, fine judgment and long and prosperous business career forbid the conclusion that he intended by the use of the language "cash from any money to my credit at the time of my death" to include as money to his credit bonds and notes not due.

When we look to the whole will we find that the testator speaks somewhat in detail of his other property which had not been devised by the clause under consideration. He authorizes his wife to collect the rents and use the same in making improvements, etc., and in supporting herself and children and unmarried daughter until the youngest child comes of age. He does not refer to the interest from his

bonds and notes, because the personal property from which such income would be derived had already been given in absolute estate to his wife. In the latter part of his will he was dealing only with the estate left after the gift of his personal property to his wife.

It is very clear from the whole will that the testator's intention was to provide liberally for his wife, who was charged with the care and support of his dependent children, and yet if the construction sought to be placed upon his will by the appellants were sound, his wife would have far less with which to carry her burden than she would have had if her husband had died intestate. Upon this branch of the case the decree appealed from is without error.

It is conceded that the support which the rents had to afford was for the widow, her two children and unmarried daughter. The decree appealed from gives them this support, but goes further and directs that the net proceeds of such rents shall be divided into four equal parts, one of which shall belong to Mrs. Ross and one to each of her three daughters.

We are of opinion that this provision for support means a support according to their station in life, and while from the evidence it is not likely that the rents will exceed such support before the youngest child comes of age, still it is possible that it may do so, in which event the surplus over a support would have to be preserved for distribution among all the children when the youngest child reaches maturity. The language of the testator must be regarded, and the court was without power to determine now, that until the youngest child comes of age—some fifteen years hence—all the net rents should be applied to such support.

The decree under review inadvertently holds that the pretermitted child, Verna Ross, is entitled to one-eighth of the estate, whereas it should have held her entitled to one-ninth thereof, there being nine children.

The decree appealed from must, therefore, be so modified as to provide that the net revenue from rents shall be used by Lizzie I. Ross, until her youngest child is of age, for the support of herself and three daughters, named in the decree, to the extent that such net rents may be necessary for their support according to their station in life; and further modified so as to provide that Verna Ross, the pretermitted child, shall be entitled to one-ninth of the estate. Subject to these two modifications, the decree complained of must be affirmed, with costs in favor of the appellees as the parties substantially prevailing.

*Modified and Affirmed.*