## Staunton.

### HANCKEL AND OTHERS V. HOLCOMBE.

#### September 20, 1917.

1. WILLS—*Construction—Technical Words.*—When a testator uses technical words, he is presumed to know their technical meaning, and this technical meaning will be ascribed to them.
2. WILLS—*"Bequests"—Construction.*—Although the word "bequests," if given its technical meaning would include a residuary gift, yet where from other portions of the will it clearly appears that the testatrix used the word in the sense of specific bequests, it should be given that meaning.
3. WILLS—*Construction.*—If the testator himself has clearly explained or indicated the meaning which he attaches to a particular word, that meaning must prevail in order to carry out the testator's intent, irrespective of the technical or grammatical meaning of such word.
4. WILLS—*Construction.*—Every part of a will, including codicils, must be construed together in cases of doubt, in order to ascertain the meaning of the testator.

Appeal from a decree of the Circuit Court of Roanoke county. Decree for complainant. Certain defendants appeal.

*Affirmed.*

The opinion states the case.

*Nathaniel T. Green* and *Hall & Apperson,* for the appellants.

*R. E. Scott, L. H. Cocke, A. P. Staples, Jr.,* and *S. S. Lambeth;* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The question to be determined in this case arises under a bill in equity filed by Edward W. Robertson, administrator d. b. n. c. t. a. of Letitia F. Sorrell, deceased, against her legatees and devisees for the construction of her will with three codicils thereto.

That portion of the will which it is necessary to consider in the decision of the question involved reads thus:

"I desire my husband shall sell and reinvest, and use all interest as he sees best—that is he is to sell the land known as the Barrens, all or any portion of it, if he so desires. At his death, I desire that if not sold, all or any portion of it, shall be sold according to the views of my executors and the following legacies paid: To my niece, Letitia Landon Holcombe, $1,000.00, to my niece Alice Watts Holcombe, $500.00, to my niece, Elizabeth Bolling, $500.00, to my nephew, William Watts, $2,000.00, to my nephew, Hugh Watts, $1,000.00, to my niece, Jeanie Watts, $500.00. The remainder of my estate to go to my sister, Alice W. Robertson, and at her death, to her three daughters, Emma W. DuBose, Alice W. Hanckel and Letitia Sorrell Whaley; and to those of her daughters who die without issue, the principle of their proportions as also her mother's portion, shall go to my great niece, Alice DuBose.

"I also leave to my niece, Letitia Sorrell Whaley, the policy on my husband's life—this in fee simple—I desire my nephew, George Morris, to hold the proportion of my estate which will go to my nieces, Emma DuBose and Letitia Sorrell Whaley, and to pay them the interest thereon."

The codicils read thus:

"Sept. 1st, 1900.
"Wishing to make a few alterations in certain bequests,

I, Letitia G. Sorrel, being of sound mind, though somewhat feeble health, declare this codicil a portion of my will—

"After my husband's death, Francis Sorrell, I wish, if not already done, that my estate known as 'the Barrens' shall be sold, hoping it will bring as much as $20,000.00 (twenty thousand dollars) I make the following bequests —to my niece, Letitia Landon Holcombe, in recognition of her loving care of me, I give $2,500 (instead of $1,000); to my niece, Alice W. Holcombe, I give $1,000 and also $1,000 to my niece, Mrs. Elizabeth Bolling—To each of the children of my nephew, J. Allen Watts—Wm. Hugh and Jeanie, I give $1,000. For a monument for the grave of my dear brother Wm. Watts, I leave $100.00—To St. John's E. Church, Roanoke, I leave $100.00 to aid in arranging the Sunday school room for a chapel. All the remainder of my property I give to my sister, Alice W. Robertson for her life, and at her death, to her three daughters, unless my property should sell for over $20,000. In that event the various bequests must be increased in due proportions —I mean the bequests to my relatives. I also desire $50 to be given to my faithful servant, Allen Hawkins, and $25 to be given to my former servant, Ellen Saunders. Written in my own hand."

## Codicil No. 2.

"This is only to recapitulate in writing, not in figures, my bequests—To my niece, Letty L. Holcombe, twenty-five hundred dollars, to my niece, Alice W. Holcombe, one thousand dollars—To my niece, Elizabeth Bolling, one thousand dollars—To my nephew, Wm. Watts, one thousand dollars—To my nephew, Hugh Watts, one thousand dollars. To my niece, Jenny Watts, one thousand dollars. For a monument over my brother, Wm. Watts, I give one hundred

dollars. To St. John's Church towards arranging the S. school room for a chapel, one hundred dollars—To Allen Hawkins, fifty dollars, and to Ellen Saunders, if alive, twenty-five dollars. In my own hand."

### Codicil No. 3.

"In my own handwriting, I make this my third codicil. I desire if my property sells for anything over twenty thousand—that two thousand of it shall be held in trust by George Watts Morris for my great niece, Alice DuBose, and five hundred be added to my bequest of twenty hundred to my niece, Letty Landrum Holcombe—anything that should be over, to be added to the other bequests in equal proportions—nothing to be given nor our home dismantled in any way until after my husband's death."

The controversy arises as to the disposition to be made of the excess above $20,000 of the proceeds of sale of the farm called "the Barrens." It is claimed by the appellants, the two daughters and granddaughter of Alice W. Robertson, the sister of testatrix, that they should share in such surplus proceeds proportionately with certain of the other beneficiaries under the will, who are also nieces and nephews of the testatrix.

There is no difference between counsel as to the general rules applicable to the construction of this will, and, indeed, they each rely upon the same generally accepted canons of construction.

It will be noted that under the original will Alice W. Robertson and her daughters were to receive the entire residue of the estate after the payment of certain specific legacies. Then on September 1, 1900, the testatrix wishing, as she expresses it, to make a few alterations in certain bequests, and in view of the fact that it had occurred to her that the farm "the Barrens" might bring as much as

$20,000, she, by the first codicil, increases the specific legacies, provides for a monument at the grave of her brother, and makes gifts to St. John's Episcopal Church, Roanoke, as well as to two of her servants. If there were no other codicils, while there might be some difference of opinion, it is probable that any obscurity which appears in the will would be resolved in favor of these appellants, upon the doctrine that when a testator uses technical words, he is presumed to know their technical meaning, and this technical meaning will be ascribed to them. The language of this first codicil, providing that in case the farm should sell for over $20,000 the bequests to her relatives must be increased in due proportions, would probably be construed to include her sister and her sister's daughters, because they are certainly relatives, and because the word "bequests" would doubtless be construed to have its technical meaning, and include all the gifts to relatives contained in the will. *Waring* v. *Waring,* 96 Va. 641, 32 S. E. 153; *Ross* v. *Ross,* 115 Va. 374, 79 S. E. 343.

It will be noted, however, that in codicil No. 2 (and every part of the will must be construed in cases of doubt in order to ascertain the meaning of the testatrix) she herself expressly limits and interprets the meaning of the language "my bequests." While the avowed purpose of codicil No. 2 is only to recapitulate in writing, not in figures, her bequests, the fact that she only names her nieces and nephews, the legatees to whom she had given specific pecuniary legacies in her will and the first codicil, and makes no reference to Mrs. Robertson or her children, or to that gift, plainly indicates the sense in which the testatrix used the words "my bequests."

The third codicil also manifests the purpose of the testatrix to distribute the surplus proceeds of the sale of "the Barrens" to those to whom she had previously given specific pecuniary legacies, and to exclude Mrs. Robertson and

her daughters from participation therein. That codicil, referring only to such surplus, provides that out of it shall first come a legacy of $2,000 to be held in trust by George Watts Morris for her great niece, Alice DuBose, and that $500 should be added to the bequest to Letty Landrum Holcombe, and that the residue should be added to the "other bequests in equal proportions." It appears to us that the words "in equal proportions" were carefully chosen by the testatrix to express her previously indicated purpose, because in dealing with this surplus in the first codicil she had directed that it be distributed between her specific pecuniary legatees "in due proportions," for it will be observed that in that first codicil these legatees who were to share in this surplus had been given legacies of varying amounts, but when in codicil 3 she added $500 to the specific legacy of her niece, Letty Landrum Holcombe, and excluded her from further participation in such surplus, it left five specific pecuniary legacies at $1,000, so that these legacies now being equal in amount the disposition she desired to make of this surplus between these five legatees could unquestionably be better expressed by the words "equal proportions." The words previously used, "due proportions," while most appropriate in order to provide for a proportionate division between legatees who were to receive varying amounts, had now become less appropriate because her intention could be more clearly expressed by the words "equal proportions." Nowhere in the will is that part of her estate which is clearly to go to her sister, Mrs. Robertson, and her daughters referred to as either a legacy or a bequest. In the will it is referred to as the remainder of her estate; in the trust created for Mrs. Robertson's daughters, Mrs. DuBose and Mrs. Whaley, it is spoken of as the *proportion* of her estate; in the first codicil it is referred to as the "remainder of my property," and in the second and third codicils it is not referred to in any way.

The case is controlled by the rule, that if the testator himself has clearly explained or indicated the meaning which he attaches to a particular word, that meaning must prevail in order to carry out the testator's intent, irrespective of the technical or grammatical meaning of such word.

In *Randolph* v. *Wright,* 81 Va. 612, it is thus expressed: "and where from the context of a will the testator has explained his own meaning in the use of certain words, the courts will take that explanation as their guide without resorting to lexicographers to determine what is the meaning in the abstract, or to adjudicated cases to discover what they have been held to mean in other wills."

In *Carnagy* v. *Woodcock,* 2 Munf. (16 Va.) 240, 5 Am. Dec. 470, this is said: "The testator having explained his own meaning in the use of these terms, I shall take that as my guide, without resorting to lexicographers to determine what the same terms ought to mean in the abstract, or to adjudicated cases to discover what they have been decided to mean under different circumstances." *Tebbs* v. *Duval,* 17 Gratt. (58 Va.) 361; *Moon* v. *Stone,* 19 Gratt. (60 Va.) 239 (argument); 2 Minor's Inst. (4th ed.) 1055.

The trial court excluded the appellants, Mrs. Robertson's daughters and granddaughters, from participation in the surplus above $20,000 arising from the sale of "the Barrens" farm, and correctly construed the will, so that its decree must be affirmed.

*Affirmed.*