Staunton.

HURT AND OTHERS V. HURT.

September 20, 1917.

1. WILLS—*Personal Estate—Definition.*—The words "personal estate," in a will, are broad enough to cover intangible personal property as well as tangible property.

2. WILLS—*Construction—Technical Words.*—When technical words are used they are presumed to be used technically and words of a definite legal signification are to be understood as used in their definite legal sense unless the contrary appears on the face of the instrument.

3. WILLS—*Construction—Intention of Testator.*—In the construction of wills the intention of the testator, if not inconsistent with some established rule of law, must control; yet that intention must be found in the language of the testator used in the will; in the meaning of the words used by the testator, when properly interpreted, rather than his presumed or supposed intention.

4. WILLS—*"Use"—Jus Disponendi.*—The word "use" does not in its ordinary meaning import any power of disposition of the *corpus* referred to—the *jus disponendi* of the *corpus*—but the contrary; indeed, only the right to use and enjoy the benefit of the *corpus* is implied by the word "use."

5. WILLS—*Construction—Jus Disponendi—Case at Bar.*—A testator devised to his executors all his property, both real and personal, in trust during the life of his wife; and provided that the executors should take charge of his "personal estate" and convert the same into money, except so much as his "wife might desire to keep for her use," and further directed that from the rental of his real estate and the interest from his personal estate, the executors should pay to his wife, as she needed it, so much as would give her a "comfortable support," "my wife to be judge of the amount she may need."

*Held:* That the widow was not given the *jus disponendi* of the intangible personal estate under these provisions of the will.

6. WILLS—*Construction—Construed as of the Date of the Death of the Testator.*—A will is to be construed as of the date of the death of the testator and its provisions cannot be changed to

meet a contingency not foreseen by the testator. Thus, where a testator made ample provision in his will to insure his widow a "comfortable support" at the time of his death, these provisions cannot be changed to meet a contingency not foreseen by the testator, viz., the increased cost of living since his death.

Appeal from a decree of the Circuit Court of Montgomery county. Decree for defendant. Complainants appeal.

*Reversed in part.*

## STATEMENT OF THE CASE AND FACTS.

This case involves the sole question of whether the appellee, the widow of John B. Hurt, deceased, under the will of the latter, is entitled to and is the absolute owner of the intangible personal property of the estate of such testator?

The solution of this question depends upon the proper construction of the will of said testator of which the following clauses only are deemed material, namely:

"Second: I devise and bequeath to my executors hereafter named all of my property, both real and personal, to be held by them in trust for and during the life of my wife, Sarah L. Hurt; my executors are to keep all my real estate rented, except my dwelling, so long as my wife desires to occupy it; they are to keep my houses in good repair, and see that the taxes and insurance are kept paid; they shall take charge of my personal estate, and convert the same into money, except so much as my wife may desire to keep for her use, and shall loan out the same upon proper security. From the income derived from the rental of my real estate and the interest from my personal estate I direct my executors to pay to my beloved wife as she needs it so much as will give her a comfortable support, my wife to be judge of the amount she may need.

"Third: After the death of my wife I will and direct that my estate be divided into seven equal parts. I devise and bequeath absolutely and in fee simple to my brother James H. Hurt, one-seventh of my said estate, to my brother W. W. Hurt, one-seventh of my said estate, to my sister Elizabeth Shaffer (wife of John R. Shaffer), one-seventh of my said estate, and to the children of my sister Margaret A. Repass to be divided equally between her said children, one-seventh of my said estate.

"Should either of my brothers above named or my sister die before my wife, then the parent's portion shall go to their descendants if any. If any dies without descendants, then his or her share is to be divided among my other devisees and legatees, in the proportions and according to the conditions and limitations set forth in the other clauses of this my will."

Then follows, in subsequent parts of the will, provisions as to the persons entitled to take such seven parts of the estate "after the death of my wife," as repeatedly stated in the will.

The will is dated October 8, 1911. The testator died on April 20, 1915, and the will was probated on May 3, 1915. The widow was then about sixty-five years of age.

At the time of his death the estate of the testator consisted of real estate, tangible and intangible personal property. The real estate consisted of a thirteen-room dwelling house, located on a large lot of two and three quarter acres in the town of Wytheville, Va., where the testator and his wife resided at the time of his death, and several other houses and lots—rented out—and some vacant land in and near such town which might be cultivated or rented out for cultivation. The tangible personal property consisted of household and kitchen furniture, a Ford automobile and a cow. The intangible personal property consisted of stock in the Wytheville Sanitary Company, money in bank, notes

and bonds for money lent out, accounts of debts due testator, and a life insurance policy of $1,000.00. The appraised value of said property is as follows:

*Real Estate—*

| | | |
|---|---:|---:|
| Said residence and lot ................. | $ 3,500 | 00 |
| Other improved real estate ............. | 6,250 | 00 |
| Unimproved real estate ................ | 2,450 | 00 |
| | $ 12,200 | 00 |

*Tangible Personal Property* .............       425 00

*Intangible Personal Property—*

| | | | | |
|---|---:|---:|---:|---:|
| Said stock ..................$ | 687 | 50 | | |
| Money in bank ................ | 855 | 23 | | |
| Notes, bonds and accounts considered good by executor .... | 3,217 | 56 | 4,760 | 29 |

Total estate ...................:............. $ 17,385 29

The testator never had a large income. He was deputy clerk of the circuit court for six years, in the latter part of his life, but for several years before his death he was in bad health and had no income except from his property, which at such time was about the same as when he died. He accumulated his estate in small amounts by careful saving. He had no children. He and his wife lived in the residence above named for a number of years before his death. Their manner of life was comfortable but frugal. The wife did the housework except occasionally she would hire extra help and testator did the most of the work about the home, such as caring for the fires, etc., when not too unwell to do so. They kept no servant regularly. In testator's life time, when heat was needed, they had fires in grates, as well as in the hot water furnace, because they preferred the open fires. The living expenses of testator

and his wife during the last years of his life were less than fifty dollars per month, including insurance on and up-keep of his property and other expenses incidental thereto, as stated by him, in accordance with the testimony of his widow.

Testator and his wife lived for the most part to themselves. The persons entitled in remainder under said will did not live nor were they much with the testator in recent years, some living in remote States—one nephew not having been heard of by testator for years, as stated in the will.

The widow had at the death of testator and has still, a small separate estate of about $1,580.00, money lent out at interest, of which $750.00 was derived from sale of a small parcel of land inherited by her, and the residue she accumulated by small savings.

The executors acting under said will have delivered to said widow all of said tangible personal property for her use, but have not delivered to her any of the intangible personal property.

The widow occupies the said dwelling house and lot, in which she and her husband resided at and before his death as aforesaid.

The executors are paying over to the widow all of the net income derived from the real estate and intangible personal property aforesaid. From this source the widow received during the first thirteen months after testator's death $698.12, or an average of $53.70 per month. During the months of May, June and July, 1916, she received $287.03 of the executors, or $71.75 per month. Up to September, 1916, a period of seventeen months, she received of the executors $985.15, or an average of $57.95 per month. The evidence shows that, as estimated in 1916, the probable net income from such property will be $700.00 or $800.00 per year.

53

Since testator's death, "little John Hurt," a nephew of testator, about twelve years of age, has lived with the widow and a brother of hers, who lives in the same town, has spent a part of his time with her. With their assistance about caring for the fires and doing chores about the place, the manner of life of the widow has been practically the same as it was before her husband's death. She does practically the same work now as before the testator's death and lives practically as comfortably. It is true that she has dispensed with a phone, which was in the house before her husband's death and that she has not used the automobile since such death, for lack of renewal of the tires to it, and uses the grates for heating the house in winter altogether, instead of making use of the hot water furnace. These changes have been made in order to economize, and in August, 1916, when her deposition was taken the widow found the increased expense of living such that it was difficult for her to live on her said income from his estate in the same way that she and her husband lived. She refers also to having had to borrow money twice to pay her expenses, but this proved to be a trifling matter of $2.50 borrowed from a niece and the same amount borrowed later from another to pay that back. The automobile was used but little in her husband's lifetime.

The heating the house by the hot water furnace doubtless grew more expensive after the testator's death and the loss of the use of the phone was to some extent a discomfort. But the preponderance of the evidence shows that as of the time of the death of her husband, even with the increased cost of living, the whole of said net income since received by the widow would have been sufficient to provide a comfortable support for her in that mode of and situation in life to which she had been accustomed to live.

*W. B. Kegley,* for the appellants.

*W. S. Poage* and *Jos. C. Shaffer,* for the appellee.

SIMS, J., after making the above statement, delivered the opinion of the court.

The claim of the widow—the appellee—is that under said will she is entitled to and is the absolute owner of the intangible personal property aforesaid. This claim rests chiefly upon the construction placed upon that portion of the second clause of the will which provides, *inter alia,* that "they (the executors) shall take charge of my personal estate and convert the same into money, except so much as my wife may desire to keep for her use;" and it is contended that by the same clause the wife is to be the judge of the amount she may need. That is to say, it is contended for appellee that the language "personal estate" quoted, includes the intangible as well as the tangible personal estate, and that the *jus disponendi* thereof is in effect given to her by the provisions of the will allowing her "to keep for her use" so much thereof as she "may desire" and making her "the judge of the amount she may need," bringing the case within the familiar rule laid down in the *May and Joynes Case,* 20 Grat. (61 Va.) 692, and subsequent Virginia cases applying such rule.

The position is also taken in behalf of the appellee that when the "four corners" of the will are examined in the light of the facts and circumstances surrounding the parties at the execution of the will and prior thereto, the will shows that the testator intended his widow to take and use the personalty (intangible as well as tangible) in such manner as she might elect and that this would give her the absolute title thereto.

In the view we take of the case, it will be unnecessary for us to discuss the rule of *May and Joynes,* or the affect of the amendment to section 2418 of the Code of Va. (see Acts 1908, p. 187) upon that rule.

Counsel for appellee cite a number of authorities to the effect that the language "personal estate" used in the clause of the will under consideration is broad enough to cover intangible personal property. This is undoubtedly correct. They also cite authority (*Ross* v. *Ross,* 115 Va. 374, 79 S. E. 343), to the point that such, indeed, is the technical and accurate meaning of the language "personal estate" and that "when technical words are used they are presumed to be used technically and words of a definite legal significance are to be understood as used in their definite legal sense, unless the contrary appears on the face of the instrument"—to quote from the syllabus of the last cited case. This, too, is well settled law. But—

It is also well settled that while it is true that in the construction of wills, the intention of the testator, if not inconsistant with some established rule of law, must control, yet that intention must be found in the language of the testator used in the will; in the meaning of the words used by the testator, when properly interpreted, rather than his presumed or supposed intention. *Ross* v. *Ross, supra.*

As said in *Allison* v. *Allison,* 101 Va. 543-4, 44 S. E. 906, 63 L. R. A. 920: "The object in construing wills is to arrive at the true intent of the testator, but that intent is to be gathered from the language used, for the object of construction is not to ascertain the presumed or supposed, but the expressed intention of the testator; that is, the meaning which the words of the will, correctly interpreted, convey."

Another statement of the well settled rule on this subject is contained in the syllabus of the case of *Lindsey* v. *Eckels,* 99 Va. 668, 40 S. E. 23, and is as follows: "In construing a deed or will, the object is to ascertain the inten-

tion of the maker as gathered from the language used and the general purpose and scope of the instrument, in the light of surrounding circumstances; and when such intention clearly appears by giving the words their natural and ordinary meaning, technical rules of construction will not be invoked to defeat it."

Approaching the will in the case before us, with the guidance of these rules and in the light of the situation and circumstances surrounding the testator, it clearly appears from the language used in the will that he made two provisions "for and during the life of" his wife, for "her use" and "comfortable support." It will be observed, in the first place, that nowhere is she expressly given any power of disposition of the *corpus* of any of the property; a clear and definite disposition by the testator himself being made in the will of such *corpus* in remainder "after the death of my wife" to certain other persons and their descendants. Secondly: the provisions made for the wife are two-fold— she is (1) left in possession merely of "so much" (of the personal estate) as she "may desire to keep for her use;" (2) certain income derived by the executors from the rental of real estate and the interest from the personal estate is to be paid by the executors to the wife "as she needs it so much as will give her a comfortable support, my wife to be the judge of the amount she may need." The executors are directed to "take charge of" all of the personal estate, except that directed to be left in the possession of the wife, "and convert the same into money * * * and shall loan out the same upon proper security." It is clear that the provision of the will making the wife "the judge of the amount she may need" refers, not to the personal estate which is to be left in her possession for "her use," but to the *income* from rental and *interest* the executors are to pay her and to that alone.

Now with respect to the personal property to be left in the possession of the wife for "her use": The word "use" does not in its ordinary meaning import any power of disposition of the *corpus* referred to—the *jus disponendi* of the corpus—but the contrary; indeed, only the right to use and enjoy the benefit of the corpus is implied by the word "use." *In re Moore's Estate,* 163 Mich. 353, 128 N. W. 199. The only proper "use" to which the intangible personal estate could be put by the wife would be to enjoy the income from it. This "use" of it the will itself expressly provides for, if it was not meant by the will that this property should be left in the possession of the wife, in that it directs that the executors shall convert all of the personal estate not left in the possession of the wife into money "and shall loan out the same upon proper security" and pay over the income therefrom to the wife, "as she needs it," etc. Hence it was not necessary that the intangible personal property should be left in the possession of the wife in order that she might obtain the use of it. The conversion of it into money and the lending of it out by the executors would not have at all interfered with the only proper "use" she could have of it. Not so as to the tangible personal estate. The conversion of that into money by the executors would have destroyed the benefit to the wife of the natural use to which such property could and would be put by her if she retained possession of it.

It seems clear therefore that the personal estate designated by the will as being that of which the executors should not "take charge," but should leave the possession thereof in the wife, was tangible personal property only.

Further: It is true that the tangible personal property kept by the widow for her use, because of its perishable nature may be consumed in the use, and if so consumed, her estate will not be responsible therefor to the remaindermen under said will. But the intangible personal property

is not of like perishable nature and need not be consumed in its *use*. Hence no logical inference can be drawn from the inherent nature of tangible personalty aforesaid that the testator meant to include intangible personalty in the property of which the executors should not take charge.

The foregoing conclusions give effect to the whole will, its purposes and intention as expressed therein, in favor both of the life tenant and the remaindermen, and do not allow the technical rule of construction of the language "personal estate" to be invoked to defeat the natural and ordinary meaning with which the language is used in the will before us, in so far as it refers to the property of which the widow is to retain possession.

Again: When it is remembered that the will is to be construed as of the date of the death of the testator, such construction gives effect too to the provision in his will, which the testator then properly regarded as being ample to insure "comfortable support" for his widow during her life. As noted in the statement of facts above, the preponderance of the proof is that, at the time of testator's death, the provisions made in his will for the support of his widow were sufficient to afford her a comfortable support in that mode of and situation in life to which she had been accustomed to live. If the increased cost of living since that time has rendered such provisions made by express provision of the will inadequate for such comfortable support, or should the future increased cost of living induce that result, it is to be deeply regretted, but we cannot on that account change the provisions of the will to meet a contingency not foreseen by the testator. We are satisfied that had he foreseen such a contingency the testator would have made a more ample provision for his widow, to the extent of allowing her the right to the *jus disponendi* of a portion, and perhaps all, of the *corpus*, of his estate, if needed for her com-

fortable support. But clearly he did not do so by his will as he expressed it. We cannot change the expression of it for him, however much we might like to do so.

For the foregoing reasons we are constrained to the opinion that there was error in the decree complained of, in so far as it adjudged that the appellee was entitled to elect to "keep for her use" the intangible personal property and estate aforesaid, and hence such decree must to that extent be reversed.

*Reversed in part.*