# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

CECIL CONNER, IN HIS OWN RIGHT, ETC. *v.* MADELINE LODGE
EVERHART, ET ALS.

June 15, 1933.

Present, All the Justices.

The opinion states the case.

*Cecil Conner, Wilbur C. Hall* and *Kirsh & Bazile,* for the appellant.

*Harrison & Harrison* and *R. E. Perrine,* for the appellees.

GREGORY, J., delivered the opinion of the court.

Cecil Conner, in his own right and as executor of T. P. Simpson, deceased, filed his petition in the chancery cause of *People's National Bank, et al.* v. *Flavius H. Lodge, et al.,* which was pending in the Circuit Court of Loudoun county, praying for the construction of the last will and testament of Flavius J. B. Lodge, deceased, and seeking to subject certain rents from the estate to the payment of certain debts. The circuit court construed said will adversely to the contention of the said petitioner and he is here appealing from the decree which carried into effect the construction of said will by the circuit court.

It is necessary to consider only the third clause of the will and the codicil which was later executed. The said third clause reads as follows:

"Thirdly: Upon the death of my said wife then I will and direct that my said executor as trustee will rent the farm known as 'Swarthmore' located on the Snickers Gap turnpike, on terms that will provide for the improvement of said farm by liming (preferring to rent the same to Willard L. Lodge, providing he is able to rent it) and the income de-

rived from this farm said trustee will apply and turn over to my son Flavius H. Lodge for and during the term of his natural life or until some creditor of his should undertake to subject his interest to debt in a judicial proceedings, when said interest shall then be applied to the support and maintenance of the wife of said Flavius H. Lodge and his children; upon the death of my son Flavius H. Lodge then if his said wife Ella Mary Lodge shall survive him said income shall be turned over to her for and during the term of her natural life, or until her marriage whichever shall happen first. Upon the cessation of the interest of Flavius H. Lodge either by death or otherwise as aforesaid, and upon the death of the said Ella Mary Lodge or her marriage, then said property disposed of in this the third clause of this will shall pass to and become the property of the children of my son Flavius H. Lodge and Ella Mary Lodge then living jointly and equally, except in the event any or either of said children shall die under the age of twenty-one, the share or shares of the ones so dying shall pass and belong to the brothers and sisters surviving the one so dying, and except further that in the event said child or children after attaining the age of twenty-one years shall insist upon selling his or her interest and one or more of said children shall be willing to purchase said interest then in order to encourage one or more of them to buy said interest and to keep said farm together as one tract of land it is my will and I so direct that those willing to buy shall have the privilege of buying said interest on the basis of fifty dollars per acre."

The codicil reads as follows:

"I, F. J. B. Lodge, having heretofore made my last will and testament in which I have left my farm known as 'Swarthmore' containing 298 acres, 2 roods and 28 3/8 poles to Edwin E. Garrett, the executor named therein in trust, for the use of my son Flavius H. Lodge and his wife and children, as in said will set out, and now I wish to alter said provision by naming Volney Osburn as trustee

to hold the title to said farm and therefore I do hereby make this codicil to said will. And I do hereby will and direct that said Osburn be and he is hereby substituted in the place of said Garrett as trustee to hold the Swarthmore farm as aforesaid upon the same trusts and uses as set out in said will.

"But this is in nowise to alter or interfere with the remaining provisions of said will which I hereby again publish and declare in connection with this codicil to be my true last will and testament this 27th day of October, 1914."

On August 1, 1921, the People's National Bank of Leesburg, filed a creditor's suit seeking to subject the said farm to the payment of certain judgments which had been obtained against Flavius H. Lodge, whose estate in the farm, under the provisions of the will, terminated upon the institution of such a proceeding. This suit remained upon the docket after answers were filed until April, 1930, when the petition was filed by the appellant. In said petition certain judgments were set up against Ella Mary Lodge, the wife of Flavius H. Lodge, and against Willard L. Lodge one of the sons of Flavius H. Lodge, and they were sought to be enforced against the rents derived from the farm which had accrued amounting to $1,728.37. The appellant, who was the petitioner in the trial court, contended that under the third clause of the will of Flavius J. B. Lodge, quoted above, upon the termination of the estate of Flavius H. Lodge by reason of the proceeding which had been brought to subject his interest to the debts, Ella Mary Lodge, the wife of Flavius H. Lodge, became entitled to the whole of said rents derived from the farm, so long as she lived and remained the wife of Flavius H. Lodge or his widow. On the other hand the appellees, who were named defendants in the petition, took the position in their answer that they and their brother were jointly entitled, with their mother, Ella Mary Lodge, to said rents during the lifetime of their father, Flavius H. Lodge.

Mary E. Lodge, the wife of the testator, Flavius J. B. Lodge, died prior to his death.

The effect of the decree complained of was to vest a joint estate or interest in the said rents in the mother, Ella Mary Lodge and her three children, upon the termination of the estate of Flavius H. Lodge in the farm, so long as he lived. This holding, of course, was adverse to the contention of the appellant.

Where the language of the testator is plain it is not necessary to resort to rules of construction. The safest guide for construing or interpreting a will is the language of the testator when it is clear and free from doubt. *Emory & Henry College* v. *Shoemaker College*, 92 Va. 320, 23 S. E. 765; *Ross* v. *Ross*, 115 Va. 374, 79 S. E. 343.

Under the third clause of the will, the farm, "Swarthmore," was placed in the hands of a trustee to be managed and he was directed to dispose of the income derived therefrom. The testator created in the income interests which were to be turned over to the beneficiaries by the trustee under three successive conditions, and finally the testator disposed of the fee in the farm to the children then living, thereby ending the trust. The present litigation involves only the rents. The condition upon which the fee passes to the children has not arisen. The trustee was directed to dispose of the rents, upon certain conditions, in this manner:

(a) He was directed to pay the rent to the testator's son, Flavius, for his life, or until some creditor sought to subject the rent to the payment of the son's debt. A creditor did seek to subject the rent to the payment of the son's debt, therefore the son's interest in the rent ceased.

(b) When the son's interest ceased, the trustee was directed by the testator to apply the "said interest" (the rent) "to the support and maintenance of the wife of said Flavius H. Lodge and his children" until the death of the son, Flavius.

(c) Upon the death of the son Flavius, leaving his wife,

Ella Mary Lodge, surviving, the testator directed the trustee to turn over to her during her life or until her remarriage, the said income (rent).

(d)   Upon the death or remarriage of the wife, Ella Mary Lodge, the trust terminates and the farm passes to the children then living.

The foregoing analysis of clause three is taken largely from the brief of counsel for the appellees.   It seems quite conclusive and shows clearly the interest of the testator.

Under (b) the testator, by plain and unambiguous language, expresses the condition under which the wife of his son Flavius and their children shall jointly receive the rents. And by language, just as plain, under (c) he expresses the condition under which the wife is to receive the entire rents, to the exclusion of the children.   She was not to become the sole recipient of the rent until after the death of her husband, Flavius, who is still alive.   If she could become the sole recipient before her husband's death, then it was unnecessary for the testator to have made the provision in the will referred to under (c).   Such interpretation would render that provision meaningless and of no effect if the wife is entitled to all the rent before her husband's death.

The testator reiterates his purpose in the codicil.   He states therein that he has left the farm to his executor "in trust for the use of my *son Flavius H. Lodge and his wife and children* as in said will set out * * *."   This language read in connection with the will can only mean that he is giving the use of the farm to (1) his son (2) his son's wife and children and (3) to the children after the father's death and after the death or remarriage of the son's wife.   This case is unlike those cases where the testator gives his property to his wife and children or where the property is left for the support of the wife and children.   Here the gift is from father to son and son's wife and testator's grandchildren.   This case therefore is not controlled by those cases in Virginia such as *Wallace* v. *Dold,* 3 Leigh (30 Va.) 258, and the many other cases which have fol-

lowed. Those cases are predicated upon a gift to the wife. They hold that where there is a gift to the wife, express or clearly implied, the limiting words in favor of the children are construed as a motive for the gift to the wife and she becomes the donee to the exclusion of the children.

Even under the rule announced in *Wallace* v. *Dold, supra,* where the gift is to the mother and her children, the children are excluded and the mother is given the fee only when it appears from the context or the whole instrument that such was the intention of the testator. See *Fitzpatrick* v. *Fitzpatrick,* 100 Va. 552, 42 S. E. 306, 93 Am. St. Rep. 976, and a note by Judge E. C. Burks appended to the case of *Nye* v. *Lovitt,* 2 Va. Law Reg. 29; *Id.,* 92 Va. 710, 24 S. E. 345. In this note Judge Burks said:

"All the Virginia cases on this subject, we believe, are cited by Judge Lewis in *Stace* v. *Bumgardner* [89 Va. 418, 16 S. E. 252]. We invite an examination of each one of them, and we think it is safe to say that in no one of them is the decision that the children take no interest, rested on the language alone that the gift is to 'the woman and her children.' The intention to give exclusively to the woman is deduced from the context and the language of the instrument taken as a whole. We submit that if the language is to 'the woman and her children,' they take—the woman and her children—a *joint* estate, unless there is some other language in the instrument manifesting the intention that the woman shall take the whole estate, and the children nothing. 'It was resolved in *Wild's Case,* as reported in 6 Coke's R. 228, and has been hitherto treated as an undeniable position, that under a devise to a parent and children, the children, if there be any, and if no manifest and certain intent appears in the will to the contrary, will take *jointly with their parent* by purchase.' Judge Moncure, in *Nickell* v. *Handly,* 10 Gratt. [51 Va.] at page 344. It is true, it is broadly stated by Judge Lacy in *Seibel* v. *Rapp,* 85 Va. at page 30 [6 S. E. 478], that 'from the case of *Wallace* v. *Dold,* 3 Leigh [30 Va.] marg. page 258, it has

been held—with some respectable dissent at first—that the gift to the wife and her child was a gift to the wife—the reference to the children indicated the motive for the gift.' The cases cited by him do not support the proposition as stated by him. They only show, as has been before mentioned, that when the gift is to the woman and her child or children, or is in trust for them, or like phraseology is used, the children are excluded *only* when it appears from the context of the whole instrument taken together that it was the intention to exclude them. We insist that the resolution in *Wild's Case,* above cited, is still the law of Virginia, and that *the decisions* do not go counter to it, although some incautious expressions of the judges in delivering their opinions may give color to the contrary doctrine. We challenge the examination in detail of the cases to this point."

Having reached the conclusion that the decree of the trial court is plainly right we find it unnecessary to pass upon the finality of the decree of November 4, 1931, and accordingly we express no opinion regarding the point based on the contention of the appellees that that decree was the final decree rather than the decree of December 19, 1931.

*Affirmed.*