## CIRCUIT COURT OF THE CITY OF RICHMOND

In re Estate of
Cynthia Diane Parsons,
deceased

July 30, 2004

Case No. CH04-192

BY JUDGE RANDALL G. JOHNSON

This is a suit for aid and direction. At issue is the proper distribution of property under the will and codicils of Cynthia Diane Parsons. Specifically, the court must decide whether three charities and an individual, all named as beneficiaries under the will, continue to be beneficiaries after application of the codicils. For the reasons that follow, the court holds that they do.

Parsons died on November 3, 2003. Five writings have been admitted to probate: a typed will dated June 22, 1994; a holographic codicil dated June 25, 1994 (" Codicil 1" ); a holographic codicil dated July 3, 1998 (" Codicil 2" ); a holographic codicil, four paragraphs of which are in black ink and one paragraph of which is in blue ink, bearing date at the top of the page in black ink of January 23, 2002, and bearing date at the bottom of the page in blue ink of July 14, 2003 (" Codicil 3" ); and a holographic codicil partially in black ink and partially in blue ink, bearing date at the top of the page in black ink of March 6, 2002, and bearing date at the bottom of the page in blue ink of July 14, 2003 (" Codicil 4" ).[1] There is no challenge to the authenticity of any of the writings or of Parsons' capacity to dispose of her property, and the court accepts all of the writings as Parsons' testamentary papers.

In Articles Two and Three of her will, Parsons leaves all of her property to her mother if her mother survives her. Her mother did not survive her. In that

---

[1] The initial pleading refers to the last two codicils collectively as "Codicil 3." The court, however, feels that they should be referred to as separate documents.

event, Article Two leaves all of Parsons' "tangible personal property," described in the will as "including any household furniture and furnishings, automobiles, books, pictures, jewelry, art objects, hobby equipment and collections, wearing apparel, and other articles of household or personal use or ornament," to eight individuals in equal shares. Article Three, in the event her mother predeceases her, leaves "all my estate, being all property, real or personal, wherever situated, in which I may have an interest at my death not otherwise effectively disposed of," to six individuals, five of whom are also beneficiaries under Article Two, and three charities, in varying proportions. Provision is also made for successor beneficiaries if named beneficiaries predecease her.

Codicil 1 begins with the following statement:

> I, Cynthia Diane Parsons, of Richmond, Virginia, hereby make this codicil to my Will which I signed on June 22, 1994. I make no changes to that Will but I do hereby provide for the distribution of the following items of property upon my death. . . .

In spite of the statement that no changes are made to the will, Parsons then distributes 35 specific items, or sets of items, of tangible personal property, stock, retirement funds, and money, something she had not done in the will, to seven of the individuals listed as beneficiaries in her will. With regard to an eighth individual listed as a beneficiary in the will, Codicil 1 states:

> Of the 2% of residuary estate listed for Laura Nelson Lennox, if she is deceased I hereby give and bequeath it to the Tree House Animal Foundation in Chicago, Ill.

The "2% of residuary estate" is Lennox's share of the portion of Parsons' estate set out in Article Three of the will.

Codicil 2 begins with the same statement that began Codicil 1, with the following addition after the words "upon my death:"

> and that my mother is deceased. If mother, Rubinette Fleet Parsons is not deceased she should get all of my estate.[2]

---

[2] The phrase "and that my mother is deceased" should be "if my mother is deceased." Otherwise, it makes no sense. That phrase is not relevant to the issue at hand.

As with Codicil 1, Codicil 2 makes specific distributions of property, this time distributing 40 items, or sets of items, of tangible personal property, stock, retirement funds, and money. Some is distributed the same as it had been distributed in Codicil 1. Some is distributed differently. Some property distributed in Codicil 1 is not mentioned in Codicil 2, and some property distributed in Codicil 2 was not mentioned in Codicil 1. All of the beneficiaries in Codicil 2 were also beneficiaries in the will and in Codicil 1.

Codicil 3, which is partially in black ink and partially in blue ink, begins with the same statement that began Codicil 2, except that there is no mention of Parsons' mother and no statement that she makes no changes to the will. In the portion of the codicil in black ink, dated January 28, 2002, Parsons distributes ten of the items, or sets of items, of tangible personal property that were distributed in Codicils 1 and 2, and she distributes those items the same way she distributed them in Codicils 1 and 2. In blue ink, dated July 14, 2003, she distributes two rings that had not been mentioned in either of the two previous codicils. No beneficiaries are named, in black ink or in blue ink, who had not been named previously.

Codicil 4, which is also partially in black ink and partially in blue ink, begins with the same statement that began Codicil 3. In black ink, Parsons distributes three items of tangible personal property the same as those items had been distributed in the first three codicils. In blue ink, she states:

> See items listed III on the 1/28/02 dated sheet & the additional note added 7/14/03.

Paragraph III of the "1/28/02 dated sheet," which is part of Codicil 3, distributes seven items or sets of items of tangible personal property to one beneficiary. The "additional note added 7/14/03," which is also part of Codicil 3, distributes two rings to four beneficiaries, Parsons directing that one of the rings be "split up" and the stones divided.

Also in blue ink in Codicil 4 is the following:

> Any of the other items such as cert. of Deposit, stocks & savings are to be divided as follows:

| | |
|---|---|
| Emily | 35% |
| Elaine | 35% |
| Kay | 10% |
| John | 10% |
| James | 10% |

It is this last provision that forms the basis of the present suit. Specifically, if "[a]ny of the other items such as cert. of Deposit, stocks & savings" refers to all of Parsons' property except what is specifically distributed in Codicils 3 and 4, only seven of the eight individual beneficiaries mentioned in the will, and none of the charities, are entitled to share in the estate. If that language refers to less than all of Parsons' property, all of the original beneficiaries will share in the estate.

The present suit for aid and direction is brought by Herman C. Daniel, III, and John W. Mitchell, Jr., the co-executors. Mitchell, who is also a beneficiary under the will and under any interpretation of the codicils, takes no position on the issue before the court, a statement above his signature on the initial pleading stating that he is "[j]oined, but not expressing a position regarding suggested interpretation and division." (When the term "co-executor" is used in the remainder of this opinion, it refers only to Herman C. Daniel, III.)

It is the co-executor's belief, stated in the initial pleading, that Codicils 3 and 4, read together, change the will and revoke Codicils 1 and 2. He suggests that Parsons' estate be distributed only as provided in the latter two codicils. On the other hand, the Virginia Chapter of the Arthritis Foundation and the American Cancer Society, two of the charities named as beneficiaries in the will, have filed a memorandum arguing that Codicil 4 is "unusually" broad, inconsistent with the other writings, and therefore invalid. They suggest that only the will and the first three codicils be applied in distributing the estate. Alternatively, they suggest that even if Codicil 4 is valid, it does not revoke the will's provision concerning real property. Laura Lennox, the beneficiary named in the will who will not share in the estate if Codicils 3 and 4 change the will's residuary clause and revoke the earlier codicils, filed an answer but has not filed a memorandum. Her interests, however, are identical to the interests of the charities. The other beneficiaries have not filed responsive pleadings.

In construing a will, "[t]he whole will must be examined to determine the testator's intention and effect should be given to all parts of the document, as far as possible. ... Even though the language of the will may be obscure or uncertain, the testator's intention will prevail, if it can be ascertained." *Haag v. Stickley*, 239 Va. 298, 302, 389 S.E.2d 691 (1990). *See also Thomas v. Copenhaver*, 235 Va. 124, 128, 365 S.E.2d 760 (1988). "[W]hen the words of the will are capable of two different constructions, 'that should be adopted which is most consistent with the intention of the testator as ascertained by other provisions in the will; and when the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words'." *Haag v. Stickley, supra*, at 302 (*quoting Waters v. Trefouret*, 117 Va. 186, 190, 83 S.E. 1078 (1915)).

"A codicil is a part of a will, but with the peculiar function annexed of expressing the testator's afterthought or amended intention. The codicil should be construed with the will itself; and from its very nature it may as a context confirm, alter, or altogether revoke an intention expressed in the body of the instrument to which it is annexed." *Rosenberger v. Rosenberger*, 184 Va. 1024, 1042, 37 S.E.2d 55 (1946) (*quoting* 1 *Schouler on Wills*, § 487). *See also Pitman v. Rutledge*, 198 Va. 567, 572-73, 95 S.E.2d 153 (1956); *Simmons v. Gunn*, 156 Va. 305, 309, 157 S.E. 573 (1931). A will and codicil "must be read and construed together in their entirety, and so as to give effect, as far as possible, to both. . . ." *Miller v. Buchanan*, 114 Va. 76, 81, 75 S.E. 773 (1912). Where an irreconcilable conflict exists between a will and a codicil or between two codicils, the last codicil, being the "last expressed wish" of the testator, must prevail. *Rosenberger, supra,* at 1041; *Hanckel v. Holcombe*, 121 Va. 392, 93 S.E. 634 (1917).

With the above principles in mind, the court agrees with the co-executor that Codicils 3 and 4 change Parsons' will. The court disagrees with the co-executor that Codicils 3 and 4 change the will to the extent he claims or that Codicils 3 and 4 revoke the earlier codicils.

With regard to changing Parsons' will, it is clear that in spite of the "no changes" language of Codicils 1 and 2, the will is changed by *each* of Parsons' codicils. The will makes no distributions of specific property. Instead, it gives eight individuals equal shares of all of Parsons' tangible personal property and nine individuals and charities varying shares of all the rest. Each codicil makes specific distributions of specific property.

It is equally clear, however, that the will is not revoked by any of the codicils. Although the "no changes" language in Codicils 1 and 2 is inaccurate, that language unmistakably shows Parsons' intent that the will continue to be valid. Codicils 1 and 2 also specifically refer to Laura Lennox' 2% share of the "residuary estate." Since neither Codicil 1 nor Codicil 2 contains a residuary clause, Parsons can only be referring to the residuary clause of the will. In addition, Codicils 1 and 2 do not direct the payment of debts, funeral and testamentary expenses, or taxes, nominate an executor or trustee, or grant to the executor and trustee the powers set out in Va. Code § 64.1-57, all of which are done in the will. It is inconceivable that she did not intend for those provisions of the will to survive the codicils.

There is also nothing in Codicils 3 and 4 to indicate an intention to revoke the will. Although those codicils do not contain the statement that no changes to the will are made, there is no statement that the will is revoked. Also, as is true with Codicils 1 and 2, there is no provision in Codicils 3 and 4 for the payment of debts, funeral and administrative expenses, or taxes, a nomination of an executor or trustee, or the vesting of the executor and trustee with

statutory powers. Since the will and codicils have to be read together and since meaning has to be given to every part of each document if possible, the only proper reading of Codicils 3 and 4 is that they were not intended to revoke the will.

The court also holds that Codicils 3 and 4 do not revoke the previous codicils or change the will in such a way as to deprive Laura Lennox and the charities of a share of Parsons' estate. The only argument put forth by the co-executor in support of his position is that, by referring to "[a]ny of the other items such as cert. of Deposit, stocks & savings" in Codicil 4, Parsons intended to dispose of *all* of her property not specifically distributed in Codicils 3 and 4. That argument, however, ignores the fact that Parsons, in her will and afterwards, made a very clear distinction between "tangible personal property" and the rest of her estate.

Article Two of the will defines tangible personal property as "including any household furniture and furnishings, automobiles, books, pictures, jewelry, art objects, hobby equipment and collections, wearing apparel, and other articles of household or personal use or ornament." That definition is consistent with the definition of tangible personal property found in *Black's Law Dictionary* 1434 (7th ed. 1999) (" Corporeal personal property of any kind; personal property that can be seen, weighed, measured, felt, or touched, or is in any way perceptible to the senses" ), as opposed to intangible property as also defined in *Black's* (" Property that lacks a physical existence [such as] bank accounts, stock options, and business goodwill" ). *Id.*

Parsons' definition is also consistent with the law of the Commonwealth. For example, Va. Code § 58.1-602, part of Virginia's tax laws, defines tangible personal property for retail sales and use tax as:

> [P]ersonal property which may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses. The term "tangible personal property" shall not include stocks, bonds, notes, insurance, or other obligations or securities.

Similarly, in *Willard v. Moneta Building Supply*, 262 Va. 473, 551 S.E.2d 596 (2001), a case involving a stockholder's action against a corporation, the Supreme Court noted that "[t]he interest represented by a stock certificate is an intangible personal property right." *See also Ward v. Ernst & Young*, 246 Va. 317, 327, 435 S.E.2d 628 (1993); *Commonwealth v. Morris*, 196 Va. 868, 870, 86 S.E.2d 135 (1955); *Iron City Bank v. Isaacsen*, 158 Va. 609, 628, 164 S.E. 520 (1932).

"The presumption is that a testator uses words in their ordinary meaning. They are then to be taken to mean what he [or she] says." *McKinsey v.*

*Cullingsworth*, 175 Va. 411, 415, 9 S.E.2d 315 (1940). "[W]ords having a definite legal significance are to be understood as used in their definite legal sense. . . ." *Hyman v. Glover*, 232 Va. 140, 143, 348 S.E.2d 269 (1986) (*quoting Driskill v. Carwile*, 145 Va. 116, 120, 133 S.E. 773 (1926)). "[W]hen technical words are used they are presumed to be used technically, and words of a definite legal signification are to be understood as used in their definite legal sense, unless the contrary appears on the face of the instrument." *Hurt v. Hurt*, 121 Va. 413, 420, 93 S.E. 672 (1917). *See also Tiffany v. Thomas*, 168 Va. 31, 36, 190 S.E. 101 (1937).

Parsons made it clear in her will that her tangible personal property was to be treated differently than the rest of her estate. She included her tangible personal property in one article and all the rest of her property in a separate article. Her tangible personal property was to go to eight individuals in equal shares. All the rest of her property was to go to nine individuals and charities in varying shares. While none of the codicils contain the phrase "tangible personal property," a fair reading of their provisions makes it clear that Parsons continued to recognize the distinction between tangible and intangible property.

In Codicil 1, there are thirteen numbered paragraphs distributing property. The first six numbered paragraphs distribute only tangible personal property; that is, property that unquestionably fits the definition of tangible personal property contained in the will, as well as the legal definition of such property. The next five paragraphs distribute only stock and retirement funds, property that is legally defined as intangible. The last two paragraphs distribute money and a portion of the residuary estate, respectively. Each paragraph names only one beneficiary. Although some of the first six paragraphs distribute numerous items of property — for example, Paragraph 3 distributes fourteen items or sets of items to Emily Walker Scott; Paragraph 4 distributes eight items or sets of items to Elaine Walker Thomas (now Dyckman) — each of those paragraphs distributes *only* tangible personal property. None of those paragraphs distributes any other type of property. This is true even though two of the beneficiaries named in the first six paragraphs, Scott and Thomas, are also the beneficiaries of the stock and retirement funds.

Codicil 2 has eleven numbered paragraphs that distribute property. The first six paragraphs distribute tangible personal property. The next three distribute stock and retirement funds. The last two distribute money and a portion of the residuary estate. Like Codicil 1, no paragraph distributes both tangible and intangible property; some paragraphs distribute numerous items or sets of items of tangible personal property, and no paragraph names more than one beneficiary. Two beneficiaries of tangible personal property are also the beneficiaries of the stock and retirement funds. Unlike Codicil 1, one of

the paragraphs distributes several stock and retirement fund accounts. No paragraph of Codicil 1 distributes more than one stock or retirement fund account.

Codicil 3 contains three numbered paragraphs and one unnumbered paragraph that distribute property. The only property distributed in Codicil 3 is tangible personal property.

Codicil 4 contains two numbered paragraphs that distribute tangible personal property, an unnumbered paragraph referring to "items listed III" and the "additional note" in Codicil 3, and an unnumbered paragraph containing the "[a]ny of the other items" language now at issue.

As can readily be seen, Parsons consistently and repeatedly made a distinction in her will and codicils between tangible personal property and the rest of her estate. In none of those papers are the two ever mixed or combined. Tangible personal property is distributed in some paragraphs, other property is distributed in other paragraphs. This is true even when the same person receives both types of property. It is inconceivable to the court, then, that by using the phrase "[a]ny of the other items such as cert. of deposit, stocks & savings," Parsons meant to include all of her property. Everything she had written to that point shows that she had a keen awareness of the difference between the two types of property. She knew that certificates of deposit, stock, and savings accounts are intangible property. Just as important, Parsons always gave meaning to that distinction; that is, she treated it as more than a "distinction without a difference." The court sees no reason to ignore that distinction now.

Accordingly, the court holds that the phrase "[a]ny of the other items such as cert. of deposit, stocks & savings" set out in Codicil 4 refers only to Parsons' intangible property, such as stocks, bonds, bank accounts, and retirement funds. It does not refer to tangible personal property or real property. The court further holds that a proper distribution of the estate requires the executors to work backwards from Codicil 4. *See Rosenberger* and *Hanckel*, both *supra*. Thus, the two antique straight back red velvet chairs go to Peggy Parsons Jackson. The alphabet plate and the plate with the grayish blue design go to Carolyn C. Challoener. The chest of Stieff Corsage Silverware and the other items set out in Paragraph III of Codicil 3, that paragraph having been incorporated into Codicil 4, go to Emily Walker Scott. The amethyst ring goes to Darlene S. Dyer, and the "ring with three diamonds with the ruby stones" is to be split and distributed as directed in the "additional note" contained in Codicil 3.

Codicil 3 having been satisfied by application of Codicil 4, the executors must next look to Codicil 2. To the extent any item of tangible personal property set out in Codicil 2 is not distributed in Codicil 4, it must be

distributed in accordance with Codicil 2. The executors must then look to Codicil 1 and distribute any item of tangible personal property set out in Codicil 1 that is not distributed in Codicil 4 or 2. If there remains any tangible personal property not specifically distributed in any of the codicils, it must be distributed as provided in Article Two of the will; that is, equally between Peggy Parsons Jackson, Carolyn C. Challoener, Emily Walker Scott, Elaine W. Thomas (Dyckman), Kay Mitchell Mapp, Darlene S. Dyer, John W. Mitchell, Jr., and James P. Mitchell.

With regard to intangible property, Codicil 4 is inconsistent with the will and earlier codicils and therefore prevails. *Rosenberger* and *Hanckel*, both *supra*. Thus, all of Parsons intangible property must be distributed 35% to Emily Walker Scott, 35% to Elaine W. Thomas (Dyckman), and 10% each to Kay Mitchell Mapp, John W. Mitchell, Jr., and James P. Mitchell.

Since there is no mention in any of the codicils of real property, any real property belonging to Parsons at her death must be distributed under Article Three of the will; that is, 40% to Emily Walker Scott, 30% to Elaine W. Thomas (Dyckman), 6% each to Kay Mitchell Mapp, John W. Mitchell, Jr., and James P. Mitchell, 4% to the Virginia Chapter of the Arthritis Foundation, Inc., 3% each to the American Cancer Society and the Cystic Fibrosis Foundation — Virginia Chapter, and 2% to Laura Nelson Lennox.

Of course, any of the above distributions may be changed if agreed to by the beneficiary or beneficiaries involved in such distribution.